## IN THE SUPREME COURT OF THE STATE OF IDAHO
### Docket No. 38775

| | |
|---|---|
| RITA HOAGLAND, | ) |
| | ) Boise, January 2013 Term |
| Plaintiff-Appellant-Cross Respondent, | ) |
| | ) 2013 Opinion No. 58 |
| v. | ) |
| | ) Filed: May 16, 2013 |
| ADA COUNTY, GARY RANEY, LINDA | ) |
| SCOWN, KATE PAPE, JAMES | ) Stephen W. Kenyon, Clerk |
| JOHNSON, JEREMY WROBLEWSKI, | ) |
| | ) |
| Defendants-Respondents-Cross | ) |
| Appellant. | ) |
| | ) |

_____

Appeal from the District Court of the Fourth Judicial District, Ada County. Hon. Ronald J. Wilper, District Judge.

The decision of the district court is <u>affirmed</u> in dismissing Appellant's § 1983 claim; <u>reversed</u> in finding that Appellant had a § 1983 cause of action for violation of her own constitutional rights; <u>partially affirmed</u> in its award of costs as a matter of right; <u>reversed</u> in its award of discretionary costs; and, <u>affirmed</u> in denying attorney fees below. This case is <u>remanded</u> for reconsideration and entry of express findings regarding award of discretionary costs and entry of a judgment consistent with this Opinion. Costs on appeal are awarded to Respondent.

Jones & Schwartz, PLLC, Boise, attorneys for Appellant. Darwin L. Overson argued.

Greg H. Bower, Ada County Prosecuting Attorney, Boise, attorneys for Respondent. James K. Dickinson argued.

_____

W. JONES, Justice

### I. NATURE OF THE CASE

This is an appeal and cross-appeal from summary judgment dismissing claims against Defendants (Ada County, Deputy Wroblewski, Kate Pape, and James Johnson) in a 42 U.S.C. §

1983 civil rights action brought by Rita Hoagland, ("Hoagland") on behalf of herself and the estate of her deceased son, Bradley Munroe ("Munroe"), claiming a violation of a Fourteenth Amendment right to medical care and safety while Munroe was detained at Ada County Jail where he committed suicide.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Munroe had a history of incarceration at Ada County Jail ("ACJ"). He was incarcerated for two days in October 2007; three days in July 2008; twenty-eight days in August 2008; and from September 12–26, 2008. During the evening of September 28, 2008, Munroe was again arrested and charged with the armed robbery of a convenience store. Munroe was intoxicated and uncooperative. Officers transported Munroe to St. Alphonsus for medical clearance before continuing the booking process because he was exhibiting very odd behavior. At St. Alphonsus, Munroe said he would commit suicide if released, but qualified that he had no plans to commit suicide that night. St. Alphonsus cleared Munroe for booking at ACJ. During booking, Munroe was screaming, being rowdy, and not making sense when he spoke. Munroe also took a string and wrapped it around his neck. Because of his bizarre behavior throughout the night, Munroe was placed in a holding cell for observation until he was sober. While in the holding cell, a well-being check was made every fifteen minutes throughout the night. The booking process was postponed until the next morning.

The next morning at 8:00 a.m., the booking process continued, conducted by Deputy Jeremy Wroblewski ("Wroblewski"), who was in his final week of on-the-job training. As required by ACJ booking policies, Wroblewski administered a suicide risk questionnaire to Munroe. ACJ policy requires that if any of the suicide questions are answered affirmatively, the deputy must contact the jail's Health Services Unit (HSU) for further evaluation. However, because of Munroe's behavior the night before, Wroblewski's superior, Deputy Daniel Lawson, had already contacted HSU. ACJ's Psychiatric Social Worker, James Johnson ("Johnson"), arrived in the booking area at 8:01 a.m. to assess Munroe.

For his assessment of Munroe, Johnson reviewed Munroe's file from prior incarcerations, reviewed Munroe's medical history, and observed Munroe's interactions with Wroblewski and others in the booking area. During this assessment, Johnson asked Munroe whether he was currently contemplating suicide. Johnson made the determination that Munroe's risk level was not sufficient to warrant admission to HSU or single cell housing. At 8:05 a.m., the booking

2

process continued and Munroe was fingerprinted. At 8:26 a.m., Munroe was asked suicide risk questions by Wroblewski. Munroe answered some suicide questions affirmatively. However, Wroblewski did not contact HSU because HSU was already contacted earlier that day and had already assessed Munroe for suicide risk. Additionally, Wroblewski witnessed Johnson's assessment of Munroe and heard Johnson question Munroe about his suicidal tendencies, but nonetheless relied on the fact that Munroe was not found to be a suicide risk by Johnson.

Shortly after 9:00 a.m., Munroe told officers that he was "into a lot of stuff" and that people in the jail wanted to kill him. Munroe requested protective custody. Consequently, Munroe was placed in a cell by himself and a well-being check was scheduled to occur every thirty minutes. At the same time, Hoagland—Munroe's mother—called an administrative assistant at ACJ to express her concern that Munroe was suicidal. The administrative assistant conveyed Hoagland's concerns to Johnson, who did not change his assessment. At the 8:35 p.m. well-being check, the performing deputy found Munroe hanging from his top bunk by a bed sheet. Munroe was pronounced dead later that evening.

On November 17, 2008, the Estate of Bradley Munroe filed a Notice of Tort Claim.[1] On January 23, 2009, Hoagland filed a complaint ("First Complaint") in her personal capacity and as representative of Munroe's estate. This complaint named numerous parties, including Ada County, HSU supervisors, and several deputies, and the complaint alleged that deputies were watching football instead of watching detainees. The First Complaint included a § 1983 claim by Munroe's estate against Defendants, a state tort claim for the wrongful death of Munroe, and a state action for intentional infliction of emotional distress by Hoagland against the supervisor of HSU. On May 28, 2010, Defendants filed a Motion for Summary Judgment. Hoagland ultimately elected to withdraw all of her state law claims and proceed entirely under her § 1983 claim. Hoagland filed an Amended Complaint on July 12, 2010. Hoagland then sought leave to file a Second Amended Complaint on August 12, 2010, to add two parties. On August 13, 2010, Hoagland sought leave to file her Third Amended Complaint ("Third Complaint") to add a claim for punitive damages.

The Third Complaint was filed in the district court on September 14, 2010. On September 20, 2010, Defendants filed a Motion to Dismiss the Third Complaint. Defendants claimed that

---

[1] The record is very unclear as to whether a Notice of Tort Claim was actually filed by Hoagland; and if so, whether it was timely filed.

Munroe's estate was not a proper § 1983 plaintiff. On November 2, 2010, the district court entered an order granting Defendant's motion in part. The district court found that Munroe's estate was not a valid plaintiff, but found that Hoagland had standing to continue her lawsuit. Defendants filed a Restated Motion for Summary Judgment on November 12, 2010. On January 20, 2011, the district court granted summary judgment in favor of Ada County, all defendants in their official capacities, and every defendant in their personal capacities, except for Johnson. Both Hoagland and Defendants moved for reconsideration. Hoagland submitted numerous affidavits in support of her motion for reconsideration. Defendants objected to Hoagland's affidavits. Defendants also sought reconsideration, claiming that Johnson was entitled to qualified immunity. The district court granted both parties' respective Motions for Reconsideration, denied Hoagland's claims, and granted summary judgment in favor of Johnson based upon qualified immunity on March 28, 2011. On May 4, 2011, Hoagland filed her Notice of Appeal. Final Judgment was entered on May 25, 2011. On July 1, 2011, Defendants' filed their Notice of Cross-Appeal. On October 15, 2011, the district court denied Defendants' request for attorney fees but granted their request for costs. The Judgment for Costs was entered on October 24, 2011. Hoagland filed an Amended Notice of Appeal on October 29, 2011.

### III. ISSUES ON APPEAL

1.  Whether in a 42 U.S.C. § 1983 action, the plaintiff bears the burden of demonstrating a constitutional deprivation underlying his or her claim in order to survive summary judgment.

2.  Whether a decedent's estate may assert a 42 U.S.C. § 1983 cause of action for alleged violations of decedent's constitutional rights.

3.  Whether a parent has standing to pursue a 42 U.S.C. § 1983 cause of action for the suicide death of his or her adult child while incarcerated in jail.

4.  Whether the district court erred when it awarded $93,253 in costs to Defendants.

5.  Whether the district court erred when it failed to award Defendants' attorney fees.

6.  Whether either the Plaintiffs or Defendants are entitled to attorney fees on appeal.

### IV. STANDARD OF REVIEW

This Court exercises free review over a district court's conclusions of law. *Maresh v. State Dep't of Health & Welfare*, 132 Idaho 221, 224, 970 P.2d 14, 17 (1998). An appeal of an order granting summary judgment is reviewed under the same standard a district court uses when

4

granting a motion for summary judgment. *A & J Const. Co., Inc. v. Wood*, 141 Idaho 682, 684, 116 P.3d 12, 14 (2005). Under Rule 56(c) of the Idaho Rules of Civil Procedure, summary judgment is proper if "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." If the evidence reveals no disputed issues of material fact, then summary judgment should be granted. *Smith v. Meridian Joint Sch. Dist. No. 2*, 128 Idaho 714, 718–19, 918 P.2d 583, 587–88 (1996). In making this determination, "all disputed facts are liberally construed in favor of the non-moving party." *McCoy v. Lyons*, 120 Idaho 765, 769, 820 P.2d 360, 364 (1991). Circumstantial evidence can create a genuine issue of material fact. *Id.* Inferences that can reasonably be made from the record are made in favor of the non-moving party. *Id.* However, the non-moving party may not rest on a mere scintilla of evidence. *Id.* Summary judgment proceedings are decided on the basis of admissible evidence. *Heinze v. Bauer*, 145 Idaho 232, 236, 178 P.3d 597, 601 (2008).

Awards of costs and attorney fees are reviewed for an abuse of discretion. To determine whether the trial court abused its discretion, this Court must consider whether the trial court: (1) correctly perceived that the issue is one of discretion; (2) acted within the outer boundaries of its discretion and consistent with the legal standards applicable to the specific choices available to it; and (3) reached its decision by an exercise of reason. *Bailey v. Sanford*, 139 Idaho 744, 748, 86 P.3d 458, 462 (2004).

## V. ANALYSIS

### A. The District Court Applied the Proper Summary Judgment Standard.

In deciding the various motions for summary judgment before it, the district court ruled that "[s]ummary judgment of § 1983 cases involves an additional element of analysis. In § 1983 cases, plaintiff bears the burden of proof on the [c]onstitutional deprivation that underlies the claim, and must come forward with sufficient evidence to create a genuine issue of material fact to avoid summary judgment." Hoagland maintains that the district court erred in applying this added element to the summary judgment standard. She argues that at all times the burden is on the moving party.

Extensive federal jurisprudence supports the district court's summary judgment standard. In order for the plaintiff to survive summary judgment on his or her § 1983 claim, he or she must demonstrate a genuine issue of material fact as to (1) whether there was a deprivation of a

5

constitutional right; and (2) that the deprivation was caused under the color of law. *Parker v. Fayette Cnty. Pub. Sch.*, 332 F. App'x 229, 231 (6th Cir. 2009); *McAllister v. Price*, 615 F.3d 877, 881 (7th Cir. 2010) ("In a § 1983 case, the plaintiff bears the burden of proof on the constitutional deprivation that underlies the claim"); *see also Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993) (holding that to survive summary judgment on a § 1983 claim, "plaintiff [ ] has a further burden. [The Defendant] is not liable under § 1983 unless an 'affirmative link' exists between the constitutional deprivation [and the action of the defendant]"); *Ward v. Oliver*, 19 F.3d 1436, 1439 (7th Cir. 1994) (finding the plaintiff failed to raise sufficient facts to indicate that the denial of access to cigarettes and soda amounted to a constitutional deprivation); *Lindstedt v. Mo. Libertarian Party*, 160 F.3d 1197, 1198 (8th Cir. 1998) (affirming grant of summary judgment because plaintiff "had to show" that the action complained of was taken under the color of law, and that action resulted in a deprivation of a constitutional right); *Lawson v. Des Moines Indep. Sch. Dist.*, 356 F. App'x 885, 886 (8th Cir. 2009) (holding "summary judgment was proper because [plaintiff] failed to demonstrate the denial of a constitutional right").

We therefore hold that in a § 1983 action, on a motion for summary judgment, the plaintiff bears the burden of demonstrating a constitutional deprivation underlying his or her claim.

### B.     Munroe's Estate is Not a Permissible § 1983 Plaintiff.

Hoagland argues that the trial court erred when it ruled that she did not have standing as the personal representative of Munroe's estate to pursue a § 1983 cause of action for alleged violations of Munroe's constitutional rights while at ACJ. Hoagland argues that Idaho's Probate Code gives her standing to bring a survivorship and wrongful death claim under § 1983. She argues that Count I of her complaint did not abate upon the death of Munroe because the inquiry is whether Munroe's death was *caused* by the alleged constitutional violations. Hoagland argues that if the death was caused by the constitutional violation, then the claim does not abate, but if the death was unrelated to the constitutional violation then the claim abates.

Defendants argue that Idaho law precludes an estate from being a permissible § 1983 plaintiff because § 1983 is a personal cause of action that is actionable only by the person whose constitutional rights are violated. They argue that since common law in Idaho recognizes that personal causes of action abate upon the death of the claimant and since this common law rule

6

has not been changed by statute, Munroe's estate cannot bring a § 1983 claim. Defendants further maintain that a § 1983 cause of action abates when the plaintiff dies before trial, even if caused by the alleged violations. Defendants argue that there is no federal law on the issue of abatement, so the law of the forum state, Idaho, applies. Additionally, they argue that abatement is not inconsistent with federal law because a law that merely causes a plaintiff to lose a case does not render it inconsistent with federal law.

The district court held that Munroe's estate was not a valid § 1983 plaintiff because § 1983 creates a personal cause of action for violations of constitutional rights. The district court recognized the common law rule of abatement and found that because Idaho permits claims via its wrongful death statute, the abatement principle was not inconsistent with federal law.

Section 1983 provides a cause action against every person "who, under the color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects [another] person . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . ." 42 U.S.C. § 1983. This Court has held that "[t]he § 1983 cause of action, by virtue of the statute's express language, is a personal cause of action, actionable *only by persons whose civil rights have been violated*." *Evans v. Twin Falls Cnty.*, 118 Idaho 210, 217, 796 P.2d 87, 94 (1990) (emphasis added). Section 1988 provides that § 1983 actions should be exercised in accordance with federal laws. 42 U.S.C. § 1988. But in situations where federal law is deficient, the common law or statutes of the forum state shall govern, so long as they are "not inconsistent with the Constitution and laws of the United States." 42 U.S.C. § 1988. At common law in Idaho, a victim's right of action for torts dies with the victim. *Evans*, 118 Idaho at 215, 796 P.2d at 92. The common law in Idaho remains in effect unless modified by the legislature. I.C. § 72-116. The legislature has not modified Idaho's abatement rule, but it does permit wrongful death actions. I.C. § 5-311. The United States Supreme Court held that "nothing in [§ 1983] or its underlying policies indicate[s] that a state law causing abatement of a particular action should invariably be ignored in favor of a rule of absolute survivorship." *Robertson v. Wegmann*, 436 U.S. 584, 590 (1991). The policies underlying § 1983 are compensation of injured persons and the prevention of abuses of power. *Id.* at 591. The U.S. Supreme Court also ruled that the policy of compensating the injured does not require "compensation of one who is merely suing as the executor of the deceased's estate." *Id.* at 592.

7

We hold that Munroe's § 1983 claim abated with his death. This Court has clearly held that § 1983 is a personal cause of action. Furthermore, there is no federal law governing the issue of abatement. Therefore, the law of Idaho governs to the extent that it is not inconsistent with federal law. At common law in Idaho, a personal tort cause of action abates with the death of the plaintiff. That rule has only been modified to the extent that wrongful death claims are permissible by statute. The U.S. Supreme Court has clearly held that a rule of abatement is not inconsistent with the policies of § 1983 and that the policy of compensating injured persons does not extend to the estate of those persons. Just because the estate is unable to bring an abated cause of action does not render Idaho's abatement rule inconsistent with federal law.

Hoagland makes a distinction between death *caused* by the constitutional violation and death not caused by the constitutional violation. Neither Idaho nor federal law makes this distinction. Indeed, in *Evans* this Court held that plaintiff's § 1983 claim abated with the death of the decedent, who died of cardiac arrest allegedly *caused* by the alleged constitutional violations. *Evans*, 118 Idaho at 216–18, 796 P.2d at 93–95. Additionally, in the present matter, the district court properly noted that the abatement rule is not inconsistent with the policies of § 1983 because there is an adequate remedy available through Idaho's wrongful death statute for the death of Munroe. However, Hoagland opted not to avail herself of that statute, allegedly failed to timely file her Notice of Tort Claim, and voluntarily dismissed her wrongful death claim. The mere fact she chose not to pursue a cause of action available outside of § 1983 does not render Idaho's abatement rule inconsistent with federal law.

Thus, the district court properly held that Munroe's estate is not a valid § 1983 plaintiff.

**C.    Hoagland Did Not Possess a § 1983 Cause of Action Against Defendants.**

Defendants bring a cross-appeal and allege that the district court erred in permitting Hoagland to bring a § 1983 claim for the death of Munroe. Defendants argue that the Seventh Circuit at one time permitted a § 1983 claim for the loss of companionship resulting from the death of a child; however, the Seventh Circuit overruled itself at the risk of constitutionalizing all tort claims. Defendants argue that the only constitutional right Hoagland could assert is an intentional severance of her relationship with Munroe. Since Hoagland made no such assertion or argument, they suggest she has no constitutional deprivation and thus no cause of action.

In her Third Complaint, Hoagland identifies the constitutional right implicated as a "violation of Munroe's constitutionally protected rights under the Eighth and Fourteenth

8

Amendments of the United States Constitution that resulted in the wrongful death of Munroe and the termination of [ ] Hoagland's familial relationship with Munroe and the loss of his society and companionship." Before the district court, Hoagland clarified that her reliance on Idaho's wrongful death statute "is used only to provide [her] standing to assert the § 1983 claim . . . [it] is not asserted as a basis for remedy in itself." But on appeal, Hoagland argues that her § 1983 claim "incorporates Idaho's wrongful death statute, . . . which gives her standing to assert the claims [Munroe] could have asserted had he survived." Hoagland maintains that the district court permitted her to pursue her § 1983 claim, not for a violation of her constitutional rights, but as a wrongful death claim. Hoagland asks this Court to permit her to bring "a wrongful death claim under § 1983." In the alternative, Hoagland argues that this court should recognize familial association as a constitutional right. Hoagland further argues that the standard required to impose liability should be deliberate indifference and not intentional interference.

The district court examined several approaches by federal circuits. It noted that multiple circuits hold that a parent does not have a right to bring a § 1983 wrongful death action for activity not specifically aimed at interfering with the parent-child relationship. The Ninth Circuit is alone in permitting recovery based on unintentional interference. The district court, however, opted for the approach used by the Fifth Circuit in the 1992 case of *Rhyne v. Henderson Cnty.*, 973 F.3d 386 (5th Cir. 1992). The district court read this case as permitting a § 1983 claim on the basis of a forum state's survivorship laws. As such, it concluded that Hoagland had standing to pursue her § 1983 action.

The district court later clarified its ruling on Hoagland's standing as follows:

The [c]ourt is not holding that [ ] Hoagland experienced a constitutional deprivation because of the actions of [ACJ] employees. Rather, [the district court] holds that she had a constitutionally protected interest in a relationship with her son, and because Idaho wrongful death law allows her standing to bring claims for her own damage, she may state a claim for deprivation of the constitutional interest . . . when the state allegedly deprived her son of his constitutionally protected interest in adequate healthcare.

The district court then examined whether the following alleged constitutional deprivations occurred: "potential pretrial detainee's constitutional deprivation under the Fourteenth Amendment's Due Process Clause, or a prisoner's constitutional deprivation under the Eighth Amendment."

1.      *Hoagland's constitutional interest.*

9

Section 1983 grants a cause of action "to the party injured" by a deprivation of a constitutional right. 42 U.S.C. § 1983. Section 1983 is a personal cause of action, *actionable* only by persons whose *civil rights* have been violated. *Evans v. Twin Falls Cnty.*, 118 Idaho 210, 217, 796 P.2d 87, 94 (1990). The U.S. Supreme Court has held that "a plaintiff [to state a § 1983 claim,] must allege the violation of a right secured by the Constitution and laws of the United States." *West v. Atkins*, 487 U.S. 42, 48 (1988). Because § 1983 is not a source of substantive rights, but merely a vehicle to vindicate those rights, "[t]he first step in any such claim is to identify the specific constitutional right allegedly infringed." *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Courts are reluctant to expand the concept of substantive due process. *Id.* In particular, courts are reluctant to permit § 1983 actions in a manner that would constitutionalize remedies available in tort. *Russ v. Watts*, 414 F.3d 783 (7th Cir. 2005) (denying attempt to pursue a § 1983 action without sufficient evidence to demonstrate that an officer shot the plaintiff with the specific purpose of terminating decedent's relationship with his family).

The district court relied on *Minix v. Canarecci*, 597 F.3d 824 (7th Cir. 2010), for the framework it used to analyze the deprivation of Hoagland's constitutional rights. In that case, an inmate in the county jail with a history of suicidal tendencies committed suicide. The inmate's mother brought a § 1983 action against several jail officials. In examining the claim by decedent's mother, the court examined whether the jail violated the Eighth and Fourteenth Amendment rights of the decedent. *Id.* at 831. The test it utilized was (1) whether the prisoner suffered an objectively serious harm that presented a substantial risk to his safety; and (2) whether the defendants were deliberately indifferent to that risk. *Id.* Ultimately, the court found that suicide is always a substantial risk, but there were insufficient facts to demonstrate deliberate indifference. *Id.*

We find that *Minix* is not relevant to Hoagland's constitutional claim. Minix brought her § 1983 claim as the personal representative of decedent. *Id.* at 829. "Minix, as the personal representative of [decedent]'s estate, brought a § 1983 action against multiple defendants . . . Minix alleged that the defendants violated [decedent]'s Eighth and Fourteenth Amendment rights by displaying deliberate indifference to his risk of suicide." *Id.* In Idaho, such estate claims are impermissible. Furthermore, the district court itself recognized such estate claims were impermissible. *Minix* involves an estate's § 1983 claim for violation of the decedent's Eighth

Amendment rights, not a parent's § 1983 claim for violation of her right to a familial relationship.

Hoagland maintained in her Third Complaint, that ACJ's actions violated her Fourteenth Amendment rights to associate with her son. But the district court effectively permitted Hoagland to pursue a claim for the constitutional violations suffered by Munroe, not for the violations Hoagland suffered herself as a result of ACJ's actions. Section 1983 is a personal cause of action that abated with Munroe's death. Thus, the district court erred by examining the Eighth and Fourteenth Amendment constitutional violations of Munroe because those violations abated. Instead, Hoagland must demonstrate *her* civil rights were violated. It is improper to analyze whether the state violated Hoagland's constitutional right to a familial relationship with Munroe based on whether the state violated Munroe's Eighth and Fourteenth Amendment rights.

Whether a parent of an adult child can recover under § 1983 on the basis of interference with their familial relations is a question of first impression in Idaho. The U.S. Supreme Court is always reluctant to expand the concept of substantive due process. *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997). There is, however, a fundamental constitutional liberty interest in the care, custody, and control of a person's minor child. *Troxel v. Granville*, 530 U.S. 57, 65 (2000).[2] It is broadly recognized that finding a constitutional violation based on actions not directed at the parent-child relationship stretches the concept of due process too far. *See Russ*, 414 F.3d at 790; *McCurdy v. Dodd*, 352 F.3d 820, 829–30 (3d Cir. 2003); *Valdivieso Ortiz v. Burgos*, 807 F.2d 6, 8–9 (1st Cir. 1986). All federal circuits that have addressed this issue, except the Ninth Circuit, disallow § 1983 claims for the unintentional termination of the parent-child relationship. *See, e.g.*, *Russ*, 414 F.3d at 791 (reversing *Bell v. City of Milwaukee*, 746 F.2d 1205 (7th Cir. 1984), which permitted a § 1983 claim by a parent for the unintentional termination of familial relationship); *McCurdy*, 352 F.3d at 829–30 (requiring official action to be "deliberately directed at the parent-child relationship"); *Curnow v. Ridgecrest Police*, 952 F.2d 321, 325 (9th Cir. 1991). We find that the best and most concise articulation of the standard required to make out a violation of a right to a familial relationship sufficient to warrant a § 1983 claim is that articulated by the Tenth Circuit in *Trujillo v. Bd. of Cnty. Comm'rs of Santa Fe Cnty.*: "an

---

[2] The *Troxell* case involves the constitutional rights of a parent with regard to his or her *minor* child. The constitutional implications of a parent's right to have a relationship with an adult child are significantly less clear.

allegation of intent to interfere with a particular relationship protected by the freedom of intimate association is required to state a claim under [§ 1983]." 768 F.2d 1186, 1190 (10th Cir. 1985).

Hoagland argues that a deliberate indifference standard should apply. Deliberate indifference, however, is the standard used when determining whether Eighth Amendment rights were violated, not whether a Due Process right to familial relations was impermissibly terminated. *See Minix*, 597 F.3d at 831. The Tenth Circuit's articulation is consistent with the decisions of other circuits, which recognize a constitutional right to familial relations, but looks for activity to be directed at that relationship.[3] Applying this standard to the present matter, Hoagland lacks a cause of action. Though she alleged interference with her familial relations, she does not raise, allege, or argue any facts demonstrating that the activities at ACJ were directed at her *relationship* with Munroe. Much less does she claim that such interference was intentional.

Therefore, Hoagland failed to establish a violation of her constitutional rights underlying her § 1983 claim.

### 2. Hoagland's § 1983 claim did not incorporate a wrongful death claim.

Hoagland argues that even though she dismissed her state law claims against Defendants, § 1983 incorporates a wrongful death claim against Defendants, and she can proceed on that basis. In her First Complaint, she raised several state law claims, including a wrongful death claim. After Defendants raised questions about whether Hoagland properly filed a Notice of Tort Claim, she dismissed the state law claims. Her attorney told the presiding judge that she was proceeding entirely on § 1983. The basis for wrongful death in Idaho is statutory. Section 1983 is not a substantive source of rights, and serves to vindicate constitutional, not statutory rights.

---

[3] *McCurdy*, 352 F.3d at 829–30 (requiring official action to be "deliberately directed at the parent-child relationship"); *Claybrook v. Birchwell*, 199 F.3d 350, 357 (6th Cir. 2000) ("no cause of action may lie under section 1983 for . . . loss of a loved one . . . allegedly suffered personally by the victim's family"); *Shaw v. Stroud*, 13 F.3d 791, 805 (4th Cir. 1994) (holding Fourteenth Amendment does not "encompass deprivations resulting from governmental actions affecting the family only incidentally"); *Valdivieso Ortiz*, 807 F.2d at 9 (declining to find interest in incidental deprivation of the relationship between appellants and their adult relative).

It is not clear in Idaho whether Hoagland has a constitutional right to familial relations with Munroe. Certainly, no decision from this Court has recognized a constitutionally protected interest in a relationship with an adult child. Nor has this right been clearly established in the Federal Constitution. The Ninth Circuit recognizes a constitutionally protected right to a familial relationship that is protected from unintentional interference by the state. However, other circuits, like the Sixth, suggest that there is no constitutional right implicated by the loss of a family member. The remaining circuits hold that there is a constitutional right not to have a familial relationship directly or intentionally interfered with by the state. Hoagland might not have a cause of action, because she might not even be able to identify a constitutional right allegedly violated.

Even if we assume that Hoagland has a constitutional right to a familial relationship with her adult son, Hoagland fails to allege facts demonstrating a violation of that right.

12

Now on appeal, Hoagland attempts to resurrect her wrongful death claim, which she voluntarily dismissed.

Judicial estoppel precludes a party from advantageously taking one position, then subsequently seeking a second position that is incompatible with the first. *See Loomis v. Church*, 76 Idaho 87, 94, 277 P.2d 561, 565 (1954). The policy behind judicial estoppel is to protect "the integrity of the judicial system, by protecting the orderly administration of justice and having regard for the dignity of the judicial proceeding." *A & J Constr. Co. v. Wood*, 141 Idaho 682, 685, 116 P.3d 12, 16 (2005). It is intended to prevent parties from playing fast and loose with the legal system. *Id.*; *see also* 31 C.J.S. *Estoppel and Waiver* §186 (2012).

We hold that Hoagland is estopped from further advancing this argument. Hoagland told the district court that she was pursuing only a § 1983 claim and that her reliance on Idaho's wrongful death statute in her § 1983 claim was for standing, not as a basis for remedy. Now she argues that her § 1983 claim incorporates the wrongful death claim, thereby attempting to revive a claim she voluntarily dismissed. These are inconsistent positions. Consequently, Hoagland is estopped from pursuing this argument.

**D.    All Remaining Issues Related to the District Court's Grant of Summary Judgment are Moot.**

"It is well-established that this Court does not decide moot cases." *Comm. for Rational Predator Mgmt. v. Dep't of Agric.*, 129 Idaho 670, 672, 931 P.2d 1188, 1190 (1996). An issue or case becomes moot if a judicial determination on that issue will have no practical effect upon the outcome of the case. *Id.* Because Hoagland cannot pursue her § 1983 claim as the personal representative of Munroe's estate, or in her personal capacity for alleged violations of her constitutional rights, the issues raised by both her and Defendants relating to punitive damages, summary judgment to various individuals, qualified immunity, stay of discovery, dismissal of *Monell*[4] claims, and questions of evidentiary admissibility are rendered moot and will not be considered.

**E.    The District Court Did Not Make Adequate Findings in its Award of Costs to Defendants.**

On March 4, 2011, after the last defendants were dismissed from this action, Defendants moved for an award of costs and fees. The district court denied the motion for costs and attorney

---

[4] A *Monell* claim permits suit against a local government entity under § 1983. *Monell v. Dept. of Soc. Serv.*, 436 U.S. 658, 694 (1978). This is an exception to the general rule that "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Id.*

fees, finding that the action was not pursued frivolously. Defendants filed a motion for clarification or reconsideration. The district court awarded Defendants $15,815.31 in costs as a matter of right, and $77,438.12 in discretionary costs.

Hoagland argues that the district court's grant was erroneous because it includes costs that are not available as a matter of right; the district court did not make express findings in support of its award of discretionary costs; and this is not an exceptional case that permits the award of costs. Hoagland argues that she is unable to pay the discretionary costs, and as such, costs should not have been awarded.

Defendants argue that they are entitled to collect all of their costs as a matter of right, even if they were incurred before trial. Also they argue the district court properly awarded their discretionary costs because this case is exceptional. Defendants argue the case was exceptional because of the type of claims raised, the convoluted procedural history, and the extensive costs required to reconstruct Munroe's state of mind in order to defend against the action. Finally, Defendants argue that the district court should not consider Hoagland's financial ability to pay costs.

*1.      The district court erred in awarding costs totaling $918 as a matter of right.*

This Court exercises free review of the district court's compliance with the rules of civil procedure in awarding costs and attorney fees. *J.R. Simplot v. Chemetics Int'l*, 130 Idaho 255, 257, 939 P.2d 574, 576 (1997).

First, Hoagland only challenges $1,097.81 of the costs the district court awarded as a matter of right. The first cost she challenges is $182.10 for "Attempted Service." Rule 54 awards, as a matter of right, "[a]ctual fees for service of any pleading or document in the action whether served by a public officer or other person." Here, these fees were incurred in the process of serving documents. There is no indication the attempted service fees were "not reasonably incurred." I.R.C.P 54(d)(1)(C). The cost did not accrue while planning for service, but for attempting to perfect service.

Second, Hoagland challenges an award of $500 for "exhibit preparation." She alleges, and Defendants do not dispute, that the challenged exhibits were not used at trial or at hearing. Rule 54 awards, as a matter of right, "[r]easonable costs of the preparation of models, maps, pictures, photographs, or other exhibits *admitted in evidence* as exhibits in a hearing or trial of an action, but not to exceed the sum of $500 for all of such exhibits of each party." I.R.C.P. 54(d)(1)

14

(emphasis added). The plain language of Rule 54 restricts the cost of preparing exhibits to those "admitted in evidence." The restrictive nature of this language precludes awards for exhibits *not admitted* in evidence. Thus, because the exhibits prepared by the Defendants were not admitted, it was improperly allowed.

Third, Hoagland challenged an award of $415 for transcription fees of depositions that were cancelled. Rule 54 awards, as a matter of right, "[c]harges for reporting and transcribing of a deposition taken in preparation for trial of an action, whether or not read into evidence in the trial of an action." Here, the plain language of the rule restricts the charges of reporting and transcribing of a deposition to those *taken* in preparation for trial. Here, however, the depositions were cancelled, and were thus never taken. Consequently, this cost is not available as a matter of right.

Therefore the district court erred in awarding $918 of costs as a matter of right.

2.      *The district court failed to make all express findings necessary to award discretionary costs.*

Idaho Rule of Civil Procedure 54(d)(1)(D) permits the district court to award "[a]dditional items of costs not enumerated in, or in an amount in excess of that [allowed as a matter of right]." Such costs are permissible "upon a showing that [they] were necessary and exceptional costs reasonably incurred, and should in the interest of justice be assessed upon the adverse party." *Id.* The award of such costs is left to the discretion of the trial court. *Van Brunt v. Stoddard*, 136 Idaho 681, 689, 39 P.3d 621, 629 (2001). The district court shall, however, make express findings that the discretionary costs awarded are necessary, exceptional, reasonably incurred, and should be assessed against the adverse party in the interest of justice. *Evans v. State*, 135 Idaho 422, 432, 18 P.3d 227, 237 (Ct. App. 2001).

a.      There are inadequate findings demonstrating that this case was exceptional.

The district court determined that this case was procedurally exceptional because four complaints were filed. Furthermore, Hoagland later abandoned her state law claims. Then Hoagland shifted the focus of her lawsuit from an action against the deputies who were supposed to be watching Munroe to the medical care that Munroe received at ACJ. Hoagland then amended her claim again adding new defendants. Then she amended it again seeking punitive damages. The district court also noted the extensive motions filed back and forth in this case. All

15

these express findings led the district court to the conclusion that this case was procedurally exceptional.

The district court also made findings that the case was factually exceptional because inmate suicide is rare at ACJ. Furthermore, because of the nature of the facts and claim, ACJ was required to reconstruct the events of the day and attempt to determine Munroe's mental state before his suicide. Also, Defendants had to do extensive discovery and take a variety of depositions of experts because of Hoagland's Monell claims.

The district court's findings do not demonstrate that this case is exceptional. Over the years, this Court and the Court of Appeals have been inconsistent with handling discretionary costs. *Compare, e.g.*, *Hayden Lake Fire Protection Dist. v. Alcorn*, 141 Idaho 307, 314, 109 P.3d 161, 168 (2005) (holding expert witness fees can be exceptional), *and In re Univ. Place/ Idaho Water Ctr. Project*, 146 Idaho 527, 545, 199 P.3d 102, 121 (2008) (upholding award of discretionary costs on the district court's finding discretionary costs were equitable and just), *and Puckett v. Verska*, 144 Idaho 161, 169, 158 P.3d 937, 945 (2007) (permitting discretionary cost for expert witness in medical malpractice case based on the long course of litigation), *with, e.g.*, *Nightengale v. Timmel*, 151 Idaho 347, 354, 256 P.3d 755, 762 (2011) (holding that case was not exceptional merely because an expert was necessary), *and City of McCall v. Suebert*, 142 Idaho 580, 588–89, 130 P.3d 1118, 1126–27 (2006) (holding intervenor costs were not exceptional but were "routine costs associated with modern litigation overhead"), *and Fish v. Smith*, 131 Idaho 492, 493–94, 960 P.2d 176–77 (1998) (finding hiring of expert for accident reconstruction was routine). We therefore clarify that numerous complaints, depositions, and expert testimony does not render a case in and of itself exceptional. Rather, courts should assess the context and nature of a case as a whole along with multiple circumstances. *See Nightengale*, 151 Idaho at 354, 256 P.3d at 762. The mere fact numerous experts were retained or numerous amendments were filed does not standing alone render a case exceptional. Particular standards a court should consider include, but are not limited to, whether there was unnecessary duplication of work, whether there was an unnecessary waste of time, the frivolity of issues presented, and creation of unnecessary costs that could have been easily avoided. Most importantly, however, a court should explain *why* the circumstances of a case render it exceptional.

It is true that Hoagland's attorneys caused a significant amount of wasted work. Hoagland filed multiple hundred-page complaints, dismissed those complaints, and then tried to

rely on claims that she dismissed. Her adding and dismissing defendants and shifting of positions made the case significantly more complicated than it ought to have been. However, most of the discretionary fees awarded by the district court were not related to this wasted work but were for expert witnesses. Section 1983 claims are not per se exceptional. Also, there is nothing clearly exceptional about the state having to hire experts and conduct depositions in its defense. We decline to hold that a case is exceptional merely because the state retains experts and conducts several depositions or incurs travel expenses in connection with discovery.

Thus, the district court failed to make adequate findings regarding the exceptional nature of this case or explaining why it was exceptional sufficient to justify an award of discretionary costs.

b. There are inadequate findings that the costs were reasonably incurred.

The district court made the conclusion that $12,140 of travel costs; $63,060 in expert fees; $303 in record copies; and $233 in investigator fees were necessary and reasonably incurred. But the district court failed to make any express findings as to *why* they were necessary or exceptional. Because there are no express findings it cannot be said that it was necessary or exceptional to incur $63,060 in expert fees. It is not clear who these experts were and what reasonable fees for such experts would be. Also, it is not clear from the order that $12,140 for travel expenses were exceptional for this type of case or reasonably incurred; particularly when Hoagland asserts that people unrelated to the lawsuit were a part of these trips. However, the district court made no findings of fact on these assertions. Therefore, the district court failed to make express findings on the exceptional nature or necessity and reasonableness of the discretionary costs awarded.

c. The district court failed to make adequate findings demonstrating that its award of discretionary costs was in the interest of justice.

Hoagland argues that because she lacks the financial assets to pay the large costs awarded to Defendants, it is not in the interest of justice to make such an award. She argues that the district court cannot award costs without considering whether the party can pay the costs.

Though Hoagland cites a string of cases for the proposition that a court shall consider ability to pay when awarding costs, most of these are federal cases dealing with the "presumption" that costs are awarded to the prevailing party. *See Badillo v. Cent. Stell & Wire*

*Co.*, 717 F.2d 1160, 1165 (7th Cir. 1983). Federal Rule of Procedure 54 varies significantly from Idaho Rule of Civil Procedure 54. Under the federal rule, "costs . . . should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). The federal rule creates a presumption that all costs should be awarded. Based on this rule, many circuits permit a party to overcome the presumption that costs will be awarded to the prevailing party with a specific showing of indigency. *Rivera v. City of Chicago*, 469 F.3d 631, 634 (7th Cir. 2006); *Durrett v. Jenkins Brickyard*, 678 F.2d 911, 917 (11th Cir. 1982). However, the burden is on the party against whom costs are to be awarded to establish indigency. *Rivera*, 469 F.3d at 634 (finding that plaintiff failed to establish her inability to pay when the affidavit she submitted did not discuss her future expenses).

Like the federal rule, the Idaho rule has a presumption that costs are to be awarded to the prevailing party. I.R.C.P. 54(d)(1). However, the Idaho rule provides an exhaustive list of what costs are recoverable as a matter or right, and in what amount. *Id.* Limiting the amount of costs presumed to be awardable greatly mitigates the need for an indigency exception. Where the rules dramatically differ, however, is with the inclusion of subsection (d)(1)(D) to the Idaho rule, which is not in its federal counterpart. This section permits all other costs to be awarded in the district court's discretion after considering the necessity, exceptionalness, reasonableness, and interests of justice. The cases relied upon by Hoagland deal with costs being awarded presumptively, not the awarding of discretionary costs.

We conclude that the district court failed to make adequate findings that its award of discretionary costs against Hoagland is in the interest of justice. In determining whether an award of attorney fees is in the interest of justice, a court should consider the overall conduct of the lawsuit and balance that conduct against the American Rule, which presumes that each party is responsible for their own attorney fees and costs. *See Caldwell v. Idaho Youth Ranch*, 132 Idaho 120, 127, 968 P.2d 215, 222 (1998). Factors to consider include but are not limited to the merits of the lawsuit and whether or not it was pursued frivolously, *see* I.R.C.P. 11; the relationship of the costs incurred to the final disposition of the proceeding, and the value added to the proceeding by the costs incurred, *see Great Plains Equip., Inc. v. Nw. Pipeline Corp.*, 136 Idaho 466, 475, 36 P.3d 218, 227 (2001); the necessity of the proceedings to the final resolution of the lawsuit; and the behavior of the parties, and whether they needlessly ran up costs and fees. Justice is not dependent upon one's wealth or ability to pay costs; as such, this is one factor that should not be considered in this analysis.

18

As to the disputed discretionary costs in the present matter, we begin with the presumption that it is in the interest of justice for each party to pay their own costs unless the overall conduct of the lawsuit indicates otherwise. Here, this was a complicated case and was not pursued frivolously; the district court noted as much when it denied attorney fees. Most of the discretionary costs incurred are for Defendant's expert witnesses. Here, all indication is that Defendant's retention of expert witnesses was necessarily related to its case, but that does not necessarily mean they were exceptional. Though Defendant points to the multiple amended complaints filed by Hoagland's attorneys, amended complaints are not in and of themselves exceptional. Additionally, the amended complaints ultimately aided Defendants in their case because the amendments dismissed one of Hoagland's most promising claims of wrongful death. Finally, though Hoagland's attorneys might have created more work than necessary, there is no indication they were acting unreasonably or intentionally racking up the costs of the suit. We therefore hold that the district court failed to demonstrate that an award of discretionary costs was in the interest of justice, or if so, why?

Therefore, the district court's order of costs awarded as a matter of right is reduced by $918.00. The district court's judgment of discretionary costs is vacated and remanded for reconsideration and entry of express findings justifying the award.

F. **The District Court Did Not Err in Failing to Award Defendants' Attorney Fees Below.**

Defendants requested the district court to award attorney fees under both I.C. § 12-121 and 42 U.S.C. § 1988(b), which the district court denied. Defendants appeal and argue that they are entitled to attorney fees, because Hoagland pursued this action without a reasonable basis in fact or law.

1. *Fees Requested Pursuant to I.C. § 12-121.*

This court reviews a trial court's determinations regarding attorney fees for an abuse of discretion. *Bybee v. Isaac*, 145 Idaho 251, 255, 178 P.3d 616, 620 (2008). Idaho Rule of Civil Procedure 54(e) permits the award of attorney fees to the prevailing party. Such an award is only permissible when the court finds that a case was "brought, pursued or defended frivolously, unreasonably or without foundation." I.R.C.P. 54(e)(1). This court will consider the entire course of the litigation when determining whether attorney fees should be awarded. *Nampa & Meridian Irrigation Dist. v. Washington Fed. Sav.*, 135 Idaho 518, 524, 20 P.3d 702, 708 (2001).

19

"Attorney fees are not warranted where a novel legal question is presented." *McCann v. McCann*, 152 Idaho 809, 823, 275 P.3d 824, 838 (2012).

The district court did not abuse its discretion in failing to award attorney fees, because even though much of Hoagland's case was frivolous and she might have somewhat abused the process below, Hoagland presented a novel issue related to the standard required to succeed on a § 1983 claim for violations of her own rights. This issue is one of first impression in Idaho. Thus, the district court did not abuse its discretion in failing to award attorney fees pursuant to I.C. § 12-121.

2.      *Request of Fees Pursuant to 42 U.S.C. § 1988(b).*

Section 1988(b) provides that "[i]n any action or proceeding to enforce a provision of section[ ] . . . 1983 . . .of this title . . .the court, in its discretion may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the cost . . . ." 42 U.S.C. § 1988(b).

Defendants have failed to demonstrate that the district court abused its discretion in denying attorney fees below. As already discussed, this case presented a novel legal issue and was thus, not brought unreasonably, frivolously, or without an adequate basis in fact or law. Thus, the district court did not abuse its discretion in failing to award attorney fees pursuant to 42 U.S.C. § 1988(b).

**G.      Defendants Are Not Entitled to Attorney Fees on Appeal.**

Defendants request attorney fees on appeal pursuant to I.C. § 12-121. "Where a case involves a novel legal issue, attorney fees [on appeal] should not be granted under I.C. § 12-121." *Campbell v. Kildew*, 141 Idaho 640, 652, 115 P.3d 731, 743 (2005); *Weaver v. Stafford*, 134 Idaho 691, 701, 8 P.3d 1234, 1244 (2000).

Defendants also request attorney fees on appeal pursuant to 42 U.S.C. § 1988(b). That section permits an award of attorney fees in an action to enforce § 1983 where the district court, "in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fees as part of the costs . . . ." 42 U.S.C. § 1988(b).

As discussed above, this case involves the novel issue of whether Hoagland had a clearly established constitutional right to a familial relationship with her adult son. Even though much of Hoagland's appeal was riddled with mischaracterizations of the law and frivolous argument, she did present this one novel issue. As such, we decline to award attorney fees on appeal.

20

## VI. CONCLUSION

We therefore hold that the district court (1) is affirmed in dismissing Hoagland's § 1983 claim on behalf of Munroe's estate; (2) is reversed in finding that Hoagland had a § 1983 cause of action for violations of her own constitutional rights; (3) is partially affirmed in its award of costs as a matter of right; (4) is reversed in its award of discretionary costs; and (5) is affirmed in denying attorney fees below. The case is remanded for the reconsideration and entry of express findings regarding the district court's award of discretionary costs and entry of a judgment consistent with this Opinion. Costs on appeal are awarded to Respondents as the prevailing party.

Chief Justice BURDICK, Justices EISMANN, J. JONES and HORTON CONCUR.