IN THE SUPRME COURT OF THE STATE OF IDAHO
Docket No. 40463

EDGED IN STONE, INC., an Idaho
corporation,

    Plaintiff-Appellant,

v.

NORTHWEST POWER SYSTEMS, LLC,
an Idaho limited liability company,

    Defendant-Respondent,

and

CATERPILLAR, INC., a Delaware
corporation, PERKINS ENGINES, INC., a
Maryland corporation and wholly owned
subsidiary of CATERPILLAR, INC.,

    Defendants.

Boise, February 2014 Term

2014 Opinion No. 35

Filed: March 19, 2014

Stephen W. Kenyon, Clerk

Appeal from the district court of the Sixth Judicial District of the State of Idaho, Bannock County. Hon. Mitchell Brown, District Judge.

The judgment of the district court and the award of attorney's fees and costs are <u>affirmed</u>. Cost and attorney's fees on appeal are awarded to respondent.

May, Rammell & Thompson, Chtd., Pocatello, attorneys for appellant. Aaron N. Thompson argued.

Cooper and Larsen, Chtd., Pocatello, attorneys for respondent. Reed W. Larsen argued.

_____

W. JONES, Justice

## I. NATURE OF THE CASE

In an action brought by Appellant Edged in Stone, Inc. (EIS) seeking damages for breach of contract, breach of warranty, breach of implied covenant of good faith and fair dealing,

1

negligence and unjust enrichment, the district court dismissed all of EIS's claims except breach of contract and unjust enrichment. Later, the district court entered a judgment in favor of Northwest Power Systems, LLC (NWPS), dismissing EIS's remaining claims and awarded NWPS attorney's fees and costs. EIS appeals to this Court, arguing that the district court erred in granting summary judgment to NWPS.

## II. FACTUAL AND PROCEDURAL BACKGROUND

EIS is a landscaping company in Pocatello, Idaho, owned by Preston George (George). In October of 2007, EIS purchased a Compact Power 500 Series Boxer 526 DX Mini Skid Loader with a Perkins diesel engine (the Skid) from Rocky Mountain Machinery (RMM) in Blackfoot, Idaho. In May of 2009, the Skid began having mechanical problems. RMM examined the Skid in Blackfoot. RMM informed George that they believed that the Skid had a bad engine and that "they had been directed to not work on it and take it to a Perkins dealer."

EIS contacted NWPS, a Perkins dealer that engaged in the sale, service, and repair of power general equipment and engines in Boise, Idaho. The parties dispute whether George or Scott Webb (Webb), an employee of EIS, first contacted NWPS to evaluate the Skid's engine. Although the parties dispute the facts surrounding the initial contact between EIS and NWPS, George agrees that he authorized Webb to deliver the Skid to NWPS. Webb used George's truck to transport the Skid from Blackfoot to Boise. Webb delivered the Skid to NWPS and met with Adams, the owner of NWPS. Webb and Adams testified that they discussed that Adams was to look at the engine, determine the problem, and then contact EIS before making any repairs on the engine. George testified that he was aware Webb and Adams had a conversation when Webb dropped off the Skid, but he denied any knowledge of the contents of their conversation. In contrast, Webb testified that he let George know that he had delivered the Skid and that NWPS was going to examine it before making repairs.

After examining the Skid, Adams determined that the Skid's engine had been "'dusted'; that the engine needed to be replaced; that it would not be cost effective to repair; and finally, that it was not covered by an existing warranty." The district court explained, "The term 'dusted' was described in layman's terms, by Adams, as the engine having 'ingested too much dirt.'"

At this point in the transaction the parties again provided conflicting testimony. Adams testified that he called Webb to explain the problem with the Skid's engine. Adams testified:

> I told him what was wrong with the engine; I told him that it was not a warranty issue; and I gave him – I also asked him if he would like to repair it [sic] and what

2

it would take; I gave him an estimate, and he said he would get back to me as soon as he talked to his boss.

Adams believed that he sent Webb documentation with an estimate of the cost. Adams testified that Webb then called him and "gave me approval to fix the machine, that he was told by his boss that it was okay to fix the machine." Adams believed from his conversation with Webb that Webb had authorization from "his boss" for the engine replacement. Adams also testified, "I had no way of knowing if that [Webb's authority] was true or not. He brought the machine here. He represented Edged in Stone. He said he talked to his boss, and he said that he got the approval to fix it." Adams denied ever speaking with George during the examination and engine replacement process.

Webb testified that Adams called "us" and "gave us our results." He testified that he gave a bid from Adams to George and George "said fix it." He stated that George authorized him to have a conversation with NWPS "to say go ahead and fix it." But when asked if Webb actually called NWPS with an order to fix the engine, Webb testified: "I'm sure one of us did, otherwise [Adams] wouldn't have done it. I can't recall if it was [George] or not. I don't know if [Adams] recalls ever talking to [George], but I would hope that would have been the decision, you know." He also explained:

> I mean, [Adams] called, said the engine is dusted. I think we went to discussing whether or not it's covered under . . . warranty of some sort through Boxer or whatever. And then I think I presented [George] with that. He doesn't think he can fix it underneath any kind of umbrella warranty, you know. And then I was asked, you know, by [Adams] do you want me to replace the engine. This is speculation. Again, I don't – there was conversations [sic] that were held that ended up – the final determination was to have them replace the engine while it was there.

George testified that Adams informed him that the Skid's engine needed to be replaced due to the dusting. He testified that he gave Adams the authority to replace the engine, but he assumed the replacement was covered under the warranty. He testified that Adams did not tell him that the engine would not be covered under the warranty until after Adams replaced the engine and notified George that the repairs were complete. George also testified that Webb was not authorized to deal with NWPS in any way except to deliver the Skid. He testified that he was "not aware of any contact" that Adams had with Webb. He denied ever receiving an invoice from NWPS or discussing the price of the engine replacement with Adams. George agreed, however, that he did not communicate to NWPS that Webb was not authorized to tell NWPS to fix the Skid.

3

NWPS replaced the engine and billed EIS $4,385.18 for the engine replacement and labor. EIS refused to pay and asked NWPS to take out the new engine. NWPS removed the engine and billed EIS for its labor for the engine replacement and removal. EIS still refused to pay and did not pick up the Skid from NWPS.

On November 30, 2010, EIS filed a complaint against Perkins Engines, Inc., and Caterpillar, Inc., seeking damages of at least $10,000 for breach of warranty, breach of contract, breach of implied covenant of good faith and fair dealing, and unjust enrichment. On September 19, 2011, EIS amended its complaint to add NWPS as a defendant, raising two breach of contract claims and one claim each of breach of warranty, breach of implied covenant of good faith and fair dealing, negligence, and unjust enrichment. The district court set the case for a jury trial.

By joint stipulation, the district court dismissed Perkins Engines, Inc., and Caterpillar, Inc., from the suit. The district court also dismissed the breach of warranty claim, one of the breach of contract claims, and the breach of implied covenant of good faith and fair dealing claim against NWPS. By stipulation from EIS, the district court later dismissed the negligence claim against NWPS.

NWPS moved for summary judgment. With the other claims dismissed, the district court had to resolve only one breach of contract claim, which was based on NWPS's failure to obtain permission from EIS before replacing the Skid's engine, and an unjust enrichment claim. The district court determined that NWPS did not breach any contract because Webb had apparent authority as an agent of EIS to authorize the engine replacement. For the unjust enrichment claim, the district court determined that EIS failed to present any evidence to meet any of the claim's elements. The district court granted NWPS's motion for summary judgment and entered a judgment dismissing EIS's claims against NWPS with prejudice. The district court subsequently entered a judgment awarding NWPS attorney's fees and costs totaling $16,685.63.

EIS appealed to this Court, claiming that the issues on appeal were: (1) whether the district court erred in finding that there were no genuine issues of material fact and that NWPS was entitled to judgment as a matter of law on the issues of breach of contract, unjust enrichment, and breach of implied covenant of good faith and fair dealing; (2) whether the district court erred as a matter of law in holding that Webb had apparent authority to enter into an oral contract alleged by NWPS; and (3) whether the district court erred as a matter of law in not finding that the statute of frauds prevented NWPS from presenting evidence of the oral contract alleged by NWPS. EIS and NWPS both seek attorney's fees on appeal.

## III. ISSUES ON APPEAL

**1.** Whether the district court properly granted summary judgment to NWPS.

**2.** Whether EIS or NWPS is entitled to attorney's fees.

## IV. STANDARD OF REVIEW

"In an appeal from an order granting summary judgment, this Court's standard of review is the same as that used by the trial court in ruling on the motion." *Summers v. Cambridge Joint Sch. Dist. No. 432*, 139 Idaho 953, 955, 88 P.3d 772, 774 (2004). Under Idaho Rule of Civil Procedure (IRCP) 56, summary judgment is proper "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." IRCP 56(c). "If the evidence reveals no disputed issues of material fact, then summary judgment should be granted." *ParkWest Homes, LLC v. Barnson*, 154 Idaho 678, 682, 302 P.3d 18, 22 (2013). Similarly, "[i]f the record raises neither a question of witness credibility nor requires weighing the evidence, then summary judgment should be granted." *Id.* "If the record contains conflicting inferences or reasonable minds might reach different conclusions, a summary judgment must be denied." *G & M Farms v. Funk Irrigation Co.*, 119 Idaho 514, 517, 808 P.2d 851, 854 (1991). The Court should liberally construe all disputed facts in favor of the non-moving party. *Hoagland v. Ada Cnty.*, 154 Idaho 900, 907, 303 P.3d 587, 594 (2013). "Inferences that can be reasonably made from the record are made in favor of the non-moving party." *Id.* "Circumstantial evidence can create a genuine issue of material fact. . . . However, the non-moving party may not rest on a mere scintilla of evidence." *ParkWest Homes*, 154 Idaho at 682, 302 P.3d at 22 (internal citation omitted).

## V. ANALYSIS

### A. Summary Judgment To NWPS Was Properly Granted.

"The elements for a claim for breach of contract are: (a) the existence of the contract, (b) the breach of the contract, (c) the breach caused damages, and (d) the amount of those damages." *Mosell Equities, LLC v. Berryhill & Co., Inc.*, 154 Idaho 269, 278, 297 P.3d 232, 241 (2013). EIS claimed that a contract existed between EIS and NWPS solely for "the diagnosis and potential warranty repair and service of the Skid." According to EIS, NWPS breached that contract by failing to obtain EIS's "permission or request for an engine replacement in the Skid prior to replacing the Skid's engine," which "result[ed] in a substantial service bill" to EIS. NWPS responded to EIS's breach of contract claim by contending that NWPS received

authorization from EIS to replace the engine through EIS's agent Webb. To resolve this issue the district court examined whether Webb had apparent authority as an agent of EIS to bind EIS into a contract with NWPS for the engine's replacement. This Court concludes, however, that the issue of agency is irrelevant and unnecessary for the resolution of EIS's breach of contract claim. EIS's breach of contract claim fails because there is no genuine issue of material fact as to NWPS's authorization from EIS to replace the engine. There arguably are issues of fact and cause for speculation as to many of the interactions between George, Adams, and Webb. George's testimony conflicts in many instances with the testimony of Webb and Adam. But these issues are rendered immaterial and irrelevant because George authorized NWPS to replace the engine.

The evidence submitted on summary judgment shows without dispute that EIS gave NWPS authorization to replace the engine. George, the owner of EIS, testified to the following in his deposition:

> Q. And do you have any information or understanding as to why [NWPS] would have replaced the engine if they weren't given the authority by [EIS] to do it?
>
> A. No.
>
> Q. And correct me if I'm wrong, because I don't want to mix and match things, *is it your testimony that you gave [NWPS] the authority and the approval to replace the engine but you assumed it was being covered under warranty?*
>
> A. *That would be correct.*
>
> Q. And then after the engine was replaced and you were informed that you were going to have to pay for it, that was the first time you were informed that it was a maintenance issue?
>
> A. Until that point we thought the engine was covered under warranty.

Thus, George unequivocally testified that he authorized Adams to replace the Skid engine. In light of this admission by George, the issues of fact surrounding whether the authorization came from George, the owner of EIS, or Webb is immaterial. All parties agree that EIS, either though George or Webb, gave NWPS authorization to replace the engine. Summary judgment is proper when there are no genuine issues of material fact and here there are no material facts in dispute. Therefore, EIS's breach of contract claim fails because NWPS had the authority and approval from EIS to replace the engine. NWPS did not breach the contract and NWPS is entitled to judgment as a matter of law on the breach of contract claim.

Moreover, whether George believed the Skid engine's replacement was under warranty when he authorized NWPS to do the replacement is also irrelevant to the breach of contract

claim. George authorized Adams to replace the engine without any conditions or limitations. There is nothing in the record showing that Adams made any false representations to George regarding the existence or lack thereof of a warranty. George's erroneous, unstated belief that the engine was covered under a warranty does not insulate him from forming a contract with NWPS to replace the engine.

"Where the lower court reaches the correct result by an erroneous theory, this Court will affirm the order on the correct theory." *Grazer v. Jones*, 154 Idaho 58, 64, 294 P.3d 184, 190 (2013) (quoting *Markel Int'l Ins. Co. v. Erekson*, 153 Idaho 107, 113, 279 P.3d 93, 99 (2012)). Here, the district court did not resolve this case with an erroneous theory per se. Rather, the district court resolved this case on an alternative theory that this Court finds is not necessary to reach in light of the undisputed fact that EIS admits it authorized NWPS to replace the engine, albeit under an erroneous assumption, not induced by NWPS, it would be covered by warranty. We affirm the district court's order granting summary judgment to NWPS because it reached the correct result, although by a different theory. *See Johnson v. Gorton*, 94 Idaho 595, 598, 495 P.2d 1, 4 (1972) ("Where final judgment of the district court is entered upon an erroneous or different theory, it will be upheld on the correct theory.").

This Court briefly turns to the other issues raised by EIS on appeal. EIS has waived any issue regarding its unjust enrichment and breach of implied covenant of good faith and fair dealing claims because it provided no authority or argument of any kind on appeal for these issues. Idaho Appellate Rule 35(a)(6); *Bach v. Bagley*, 148 Idaho 784, 790, 229 P.3d 1146, 1152 (2010). The statute of frauds defense is irrelevant and inapplicable because NWPS has raised no counterclaim against EIS.

**B. NWPS Is Awarded Attorney's Fees On Appeal.**

EIS and NWPS both request attorney's fees pursuant to I.C. § 12-120(3). That section "compels an award of attorney fees to the prevailing party in an action to recover on a commercial transaction." *Troupis v. Summer*, 148 Idaho 77, 81, 218 P.3d 1138, 1142 (2009). Both parties agree that the gravamen of the lawsuit was a commercial transaction. As the prevailing party, NWPS is awarded attorney's fees.

## VI. Conclusion

We affirm the district court's judgment and award of attorney's fees and costs. Respondent is awarded attorney's fees and costs on appeal.

Chief Justice BURDICK, Justices EISMANN, J. JONES and HORTON, CONCUR.

7