In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 07-1860

WENDLER & EZRA, P.C.,

*Plaintiff-Appellant*,

*v.*

AMERICAN INTERNATIONAL GROUP, INC., *et al.*,

*Defendants-Appellees*.

_____

Appeal from the United States District Court
for the Southern District of Illinois.
No. 04-CV-641-WDS—**William D. Stiehl**, *Judge*.

_____

ARGUED OCTOBER 31, 2007—DECIDED APRIL 9, 2008

_____

Before EASTERBROOK, *Chief Judge*, and BAUER, *Circuit Judge*.[Œ]

PER CURIAM. Wendler & Ezra specializes in tort suits on behalf of truck drivers. It was understandably concerned when someone posted this item to an electronic bulletin board at www.teamster.net, a site frequented by truck drivers:

_____

[Œ] Circuit Judge Williams recused herself after argument and did not participate in the decision of this appeal, which is being resolved by a quorum of the panel. 28 U.S.C. §46(d).

Just sending along a newspaper clip from our local newspaper for those of you in the Illinois/Missouri area. Don't make the same mistake me and my husband did—it's a waste of time and money.

"Attorney, Brian M. Wendler, 41, was arrested Sunday AM in his Edwardsville home for alleged domestic battery. Wendler was taken to Madison County Jail."

This suit under the diversity jurisdiction seeks damages for defamation and related torts—though not because of the accurate statement that Wendler had been arrested for domestic battery. What had led to this litigation is the posting's second sentence, which implies that the writer is an unhappy client of Wendler & Ezra. The law firm says that the message came not from a client but from an adversary, American International Group (AIG), and is an attempt to steer potential clients away.

The district court granted summary judgment for defendants after concluding that Wendler & Ezra could not establish the posting's origin. To show that the posting originated from someone at AIG, Wendler & Ezra offered an affidavit by Phillip Ybarrolaza, who describes himself as the webmaster at teamster.net. According to the affidavit, software told Ybarrolaza that the posting originated from the IP address 167.230.38.7, which is registered to AIG. The affidavit did not state, however, what software had been employed, how it worked, what data had been provided to the program, and what if anything had been done to find out whether the poster had spoofed one of AIG's addresses. ("Spoofing" means taking steps that make a message appear to originate from an address other than its actual source.)

Proof that the message originated from AIG's address would not necessarily establish that AIG was complicit; it would be necessary to track the message to an originating computer and learn who had access to that machine before it would be possible to hold AIG vicariously liable. But the district court did not get that far into the case, ruling instead that the affidavit's lack of explanatory detail prevented its use. Wendler & Ezra then proposed to take Ybarrolaza's deposition. The judge said no, because discovery had closed. That left Wendler & Ezra without any evidence linking defendants to the message, and summary judgment followed.

A lot of ink has been wasted in the appellate briefs discussing whether the information stored on the computer system at teamster.net is covered by the business-records exception to the hearsay rule. Fed. R. Evid. 803(6). The answer to that question is irrelevant, not only because the raw data was never offered as evidence but also because Ybarrolaza has specialized technical knowledge that allowed him to give an expert opinion, see Fed. R. Evid. 702, and experts may rely on information that would not be admissible in evidence. Fed. R. Evid. 703.

But Ybarrolaza's affidavit does not say what software he used, what data he fed it, what results it produced, and how alternative explanations (including spoofing) were ruled out. We have said over and over that an expert's *ipse dixit* is inadmissible. "An expert who supplies nothing but a bottom line supplies nothing of value to the judicial process*." Mid-State Fertilizer Co. v. Exchange National Bank*, 877 F.2d 1333, 1339 (7th Cir. 1989). See also, e.g., *Djedovi f v. Gonzales*, 441 F.3d 547 (7th Cir. 2006); *Zenith Electronics Corp. v. WH-TV Broadcasting Corp.*, 395 F.3d 416 (7th Cir. 2005). The district court was right to exclude the affidavit, and without it Wendler & Ezra had no evidence.

Wendler & Ezra's brief tries to make up for this by pointing to a statement by one of AIG's information-technology staff that "he had been told" that the posting came from within AIG. Well, of course the judge ignored this; it is rank hearsay. Wendler & Ezra could have tried to learn *who* told him this and get the declarant's affidavit. Had plaintiff done this, we might know whether the declarant had authority to make admissions on AIG's behalf. But for all this record shows the IT person had been "told" of AIG's role only by Wendler & Ezra's lawyer. Similarly, plaintiff's assertion that AIG was "negligent in its investigation" is beside the point. There is no duty to investigate assertions made against yourself, no liability to strangers for how AIG conducts its internal affairs. Otherwise by making wild assertions people could foist large costs on third parties. Wendler & Ezra is the plaintiff; it bears the burden of production and persuasion.

The lack of evidence is not necessarily fatal, however. Wendler & Ezra was entitled to use discovery to discharge its burdens, and to this end it asked AIG to disclose information in its possession about the source of the posting and the names of any persons with knowledge of that subject. AIG did not answer this interrogatory in a way that satisfied Wendler & Ezra, which filed a motion to compel AIG to answer fully. The district court never ruled on this motion. That was a mistake. See *Farmer v. Brennan*, 81 F.3d 1444, 1449–51 (7th Cir. 1996). It may be that AIG has nothing more to disclose—though that is no reason to ignore a motion to compel. AIG contends that the motion was defective because plaintiff failed to comply with Fed. R. Civ. P. 37(a), which requires litigants and their lawyers to discuss discovery disputes privately before filing a motion to compel. Wendler & Ezra responds that

efforts were made to bridge differences but that AIG was adamant.

A court of appeals is not the right forum to address discovery disputes in the first instance. If the motion to compel is denied, or if it is granted but AIG has no useful information to supply, then Wendler & Ezra loses the case. But if information in AIG's possession implies that the posting came from AIG's internet address, then it becomes necessary to pin down who sent it, under what circumstances, and whether AIG is responsible.

The judgment is vacated, and the case is remanded for proceedings consistent with this opinion.