In the

# United States Court of Appeals

### For the Seventh Circuit

Nos. 09-2001 & 09-2817

CATHY MINIX,

*Plaintiff-Appellant*,

*v.*

FRANK CANARECCI, JR., et al.,

*Defendants-Appellees.*

Appeals from the United States District Court
for the Northern District of Indiana, South Bend Division.
No. 05 C 144—**Robert L. Miller, Jr.**, *Judge.*

ARGUED DECEMBER 2, 2009—DECIDED FEBRUARY 26, 2010

Before BAUER, KANNE, and TINDER, *Circuit Judges.*

TINDER, *Circuit Judge.* While incarcerated at the St. Joseph County Jail, Gregory Zick, an inmate with a history of suicidal tendencies, took his own life. Zick's mother, Cathy Minix, brought suit under 42 U.S.C. § 1983 against several jail officials for their alleged deliberate indifference to Zick's suicide risk. The district court granted summary judgment in favor of the defendants. We affirm.

## I. Background

Gregory Zick was a mental health patient at Indiana's Richmond State Hospital. In March 2003, Zick was on leave from the hospital at the request of his mother, Cathy Minix, to attend a family funeral. Unfortunately, Zick became separated from Minix and, on March 22, was arrested on charges of theft and battery.

Zick was incarcerated at the St. Joseph County Jail. During booking, jail personnel noted that Zick had laceration scars on his wrist and neck, and Zick admitted to attempting suicide in the previous month. It was also learned that Zick was taking several prescription medications to inhibit suicidal thoughts, and the jail arranged for Zick to continue receiving those medications.

The jail provided for inmates' health care by contracting with outside companies. Memorial Home Care, Inc. had an agreement with the jail to provide medical, dental, and psychiatric care. Dr. Douglas David was a Memorial employee who performed medical director services at Memorial's jail facility, and Nurse Jeanne James was the manager of the facility who supervised the nursing staff. The jail also had an agreement with Madison Center, Inc., a community mental health center, to provide mental health services on a referral basis.

Shortly after Zick's incarceration, a jail classification officer wrote a letter to Nurse James indicating that Zick should be placed on a suicide watch in light of his recent suicide attempt and depressed attitude. Zick was accordingly housed in medical segregation for observation. A few days later, on March 27, Madison employee

Christine Lonz met with Zick during her weekly visit to the jail for mental heath assessments. Lonz, who had experience but no formal licensure in mental health treatment, did not review Zick's medical chart or list of medications. She also did not speak with any jail personnel regarding Zick's condition or learn that he had been placed on a suicide watch. During her deposition, Lonz testified that she could not recall the specifics of her conversation with Zick, only that he was generally polite and cooperative. After speaking with Zick, Lonz filed a brief report noting that Zick denied having suicidal thoughts.

The same day as Lonz's assessment, Nurse James prepared a form requesting that Zick be taken off suicide watch in medical segregation and transferred into the general population, noting that Zick denied having suicidal tendencies.

About a month later, on April 21, Zick refused his medications, and jail officers noted that a blade was missing from Zick's razor. Officers moved Zick to medical segregation for a suicide watch and charged Zick with "attempted suicide," improper use of materials, and disruptive conduct. Over the next two days of observation in medical segregation, nurses reported that Zick was alert and polite and denied suicidal thoughts, and on April 23, James arranged for Zick's transfer out of medical segregation. Because Zick had been charged with attempted suicide and other violations, he was transferred to disciplinary segregation rather than back into the general population. A jail officer saw Zick in his

cell at dinner time, just after 4:00 p.m., but the next re-
corded check on Zick was not until 11:00 p.m., when an
officer discovered that Zick had used his bed sheet to
hang himself from the bars on his cell window. A nurse
soon arrived and determined that Zick was unresponsive.

Minix, as the personal representative of Zick's estate,
brought a § 1983 action against multiple defendants,
including Madison Center, Lonz, Memorial Home Care,
Nurse James, Dr. David, the St. Joseph County Sheriff
(Frank Canarecci, Jr.), and several other jail and county
officials. Minix alleged that the defendants violated
Zick's Eighth and Fourteenth Amendment rights by
displaying deliberate indifference to his risk of sui-
cide. Minix also raised supplemental claims under
Indiana law.

On Minix's deliberate indifference claim, the district
court granted summary judgment in favor of all defen-
dants except Memorial, Dr. David, and the Sheriff in
his official capacity. The court found a triable issue on
whether Memorial and the Sheriff were liable for main-
taining inadequate suicide-prevention policies at the
jail. As for David, the court determined that a jury could
find that David acted with deliberate indifference in
delegating the authority to assess suicidal inmates to
an unqualified nursing staff.

Upon the defendants' motion to reconsider, however,
the district court reversed its summary judgment ruling
with respect to Memorial and David. The court acknowl-
edged that, in its initial ruling, the court erroneously
relied on the opinion of one of Minix's experts,

Dr. Gutierrez, who concluded that the jail nursing staff lacked the required training to assess Zick's suicide risk. The court further determined that Gutierrez's opinion was not reliable enough to be admitted as expert evidence under Federal Rule of Evidence 702. With the exclusion of Gutierrez's opinion, Minix's evidence was insufficient to avoid summary judgment on her deliberate indifference claim against Memorial and David.

That left Minix's official-capacity claim against the Sheriff as the only federal claim in the lawsuit. But the Sheriff made Minix an offer of judgment in the amount of $75,000 pursuant to Federal Rule of Civil Procedure 68. Minix accepted the offer, and the district court entered judgment against the Sheriff, who has since paid Minix the judgment amount. Having resolved all of Minix's federal claims, the district court declined to exercise supplemental jurisdiction over Minix's state-law claims and dismissed those claims without prejudice.

Minix appeals the district court's adverse summary judgment ruling on her deliberate indifference claim with respect to only defendants Lonz, Madison Center, Nurse James, Dr. David, and Memorial Home Care. The portions of the judgment dismissing the other jail and county officials are not appealed.

## II.  Analysis

### A.  Jurisdiction and Mootness

We begin by addressing whether we have jurisdiction over this appeal, and specifically, whether Minix's accep-

tance of the Sheriff's $75,000 offer of judgment mooted this case. Minix is entitled to only one full compensation for any single, indivisible injury caused by the defendants, who are each jointly and severally liable for that injury. *Watts v. Laurent*, 774 F.2d 168, 179 (7th Cir. 1985). So if the Sheriff's $75,000 offer of judgment was full compensation for Minix's injury, Minix could not recover more compensation from any other defendant. Minix would be left with no viable claim for compensatory damages against the other defendants in this appeal, suggesting that her appeal is moot.

Still, even assuming that the Sheriff's offer fully compensated Minix's injury (which is doubtful, when compared with verdicts in other jail suicide cases, *see, e.g.*, *Woodward v. Corr. Med. Servs.*, 368 F.3d 917, 920, 930 (7th Cir. 2004) (upholding $250,000 in compensatory and $1.5 million in punitive damages)), we conclude that the offer does not moot Minix's appeal. Instead, Minix's acceptance of the Sheriff's offer merely gives the remaining defendants a possible defense that, should they be found liable, Minix is precluded from recovering additional compensatory damages from them. *See* Restatement (Second) of Judgments § 49 (1982) ("A judgment against one person liable for a loss does not terminate a claim that the injured party may have against another person who may be liable therefor."); Restatement (Second) of Torts § 885(3) & cmt. e (1979) (Compensation paid by one jointly and severally liable tortfeasor diminishes the plaintiff's claim against the remaining tortfeasors.).

We also note that, even if Minix were precluded from seeking additional compensatory damages, the possi-

bility of punitive damages would avoid mootness with respect to several defendants. Minix's complaint demands, in addition to compensatory damages, punitive damages against the defendants in this case. Although the principle of joint and several liability prevents Minix from recovering duplicative compensatory damages, it does not affect the defendants' individual liability for punitive damages, which are assessed separately against each defendant. *Bosco v. Serhant*, 836 F.2d 271, 281 (7th Cir. 1987) (clarifying that the principle of one full recovery applies only to compensatory, not punitive, damages). Moreover, the $75,000 judgment paid by the Sheriff could not have been towards any punitive damages claim, since Minix obtained that judgment against the Sheriff in his official rather than individual capacity. This official-capacity claim against the Sheriff is considered one against a municipality, and municipalities are immune from punitive damages in § 1983 suits. *United States ex rel. Chandler v. Cook County, Ill.*, 277 F.3d 969, 977 (7th Cir. 2002) (citing *City of Newport v. Fact Concerts*, 453 U.S. 247, 271 (1981)); *see also Hill v. Shelander,* 924 F.2d 1370, 1374 (7th Cir. 1991) ("[P]unitive damages [may] be recovered against a government actor only in an individual capacity suit."). It follows as a matter of law that Minix has not recovered any punitive damages from the Sheriff or anyone else, and her punitive damages claims against the individual defendants in this appeal—Lonz, James, and David—present a live controversy.

### B. Deliberate Indifference Liability Under § 1983

We review de novo the district court's grant of summary judgment for the defendants, construing the evidence and all reasonable inferences in favor of Minix. *Johnson v. Saville*, 575 F.3d 656, 659 (7th Cir. 2009) (citation omitted).

The Eighth Amendment's ban on "cruel and unusual punishments" requires prison officials to take reasonable measures to guarantee the safety of inmates, including the provision of adequate medical care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Although the Eighth Amendment applies only to convicted persons, pretrial detainees like Zick are entitled to the same basic protections under the Fourteenth Amendment's due process clause. Accordingly, we apply the same legal standards to deliberate indifference claims brought under either the Eighth or Fourteenth Amendment. *Thomas v. Cook County Sheriff's Dep't*, 588 F.3d 445, 452 n. 1 (7th Cir. 2009).

An Eighth Amendment claim based on inadequate medical care contains two elements: (1) the prisoner suffered an objectively serious harm that presented a substantial risk to his safety, and (2) the defendants were deliberately indifferent to that risk. *Collins v. Seeman*, 462 F.3d 757, 760 (7th Cir. 2006). In this prison suicide case, the first element is automatically satisfied because "it goes without saying that suicide is a serious harm." *Id.* (quotation omitted). The second, "deliberate indifference" element requires a dual showing "that the defendant: (1) subjectively knew the prisoner was at

substantial risk of committing suicide and (2) intentionally disregarded the risk." *Id.* at 761 (citing *Matos ex rel. Matos v. O'Sullivan*, 335 F.3d 553, 557 (7th Cir. 2003)).

With these standards in mind, we address whether Minix has shown a genuine issue of material fact on her deliberate indifference claims against each of the five defendants in this appeal—Lonz, Madison Center, Nurse James, Dr. David, and Memorial Home Care. Minix has sued Lonz, James, and David in both their individual and official capacities. In the sections that follow, our discussions of each of the three individual defendants pertain to Minix's individual-capacity claims. As for Minix's official-capacity claims against the individual defendants, we treat those claims the same as Minix's claims against these defendants' corporate employers, Madison Center and Memorial Home Care. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985).

### 1. Lonz

Beginning with Christine Lonz, the Madison Center employee who assessed Zick shortly after his incarceration, we conclude that Lonz is entitled to summary judgment because she lacked knowledge of "the significant likelihood that [Zick] may imminently seek to take his own life." *Collins*, 462 F.3d at 761. Lonz assessed Zick in March 2003, after he was first placed on a suicide watch. During that assessment, Zick was polite and cooperative and denied having suicidal thoughts. It is also undisputed that Lonz did not know about Zick's suicidal history or even about his placement on the suicide

watch. Absent any knowledge of Zick's risk of suicide, it cannot be said that Lonz was deliberately indifferent to that risk. *See id.* at 761 n.2 (noting that prison officials lacked knowledge of medical records that indicated the inmate's suicidal tendencies); *Matos*, 335 F.3d at 557 (noting that officials were unaware of a prior recorded suicide attempt).

Minix criticizes Lonz's assessment of Zick, claiming that any qualified mental health professional would have probed more deeply into Zick's psychological history and discovered his recent suicidal tendencies. Assuming that Lonz's assessment was inadequate, the fact that she "'*should have been aware*'" of Zick's risk of suicide is not enough to show the required, actual knowledge of serious harm. *Collins*, 462 F.3d at 761 (quoting *Estate of Novack ex rel. Turbin v. County of Wood*, 226 F.3d 525, 529 (7th Cir. 2000)). Lonz's alleged incompetence in assessing Zick shows, at most, negligence, which is insufficient for Minix to avoid summary judgment on her deliberate indifference claim. *See Matos*, 335 F.3d at 557.

### 2. Madison Center

Lonz's employer, Madison Center, is a corporation that contracted with the jail to perform the public function of providing mental health services to inmates. Such contractors are treated the same as municipalities for liability purposes in a § 1983 action. *See Woodward v. Corr. Med. Servs.*, 368 F.3d 917, 927 n.1 (7th Cir. 2004). "A municipality may be liable for harm to persons incarcerated

under its authority 'if it maintains a policy that sanctions the maintenance of prison conditions that infringe upon the constitutional rights of the prisoners.'" *Novack*, 226 F.3d at 530 (quoting *Payne v. Churchich*, 161 F.3d 1030, 1043 (7th Cir. 1998)). The municipal policy or practice must be the "direct cause" or "moving force" behind the constitutional violation, which a plaintiff may show directly by demonstrating that the policy is itself unconstitutional. *Id.* at 530-31. If a plaintiff cannot identify any formal policy that is unconstitutional, the plaintiff may show deliberate indifference through "a series of bad acts" creating an inference that municipal officials were aware of and condoned the misconduct of their employees. *Id.* at 531 (quotation omitted).

Minix does not identify any unconstitutional policy that Madison adopted or condoned. Instead, Minix argues that Madison acted with deliberate indifference by sending an employee as unqualified as Lonz to assess mental health patients at the jail. Without more evidence that Madison was aware either that its employees were routinely providing inadequate care or that Lonz in particular was unqualified, Madison's decision to send Lonz to the jail is not enough for municipal liability. *Cf. Woodward*, 368 F.3d at 927-28 (reviewing evidence that a medical services contractor repeatedly acquiesced in its employees' inadequate training and failure to follow procedure). Even if Lonz deprived Zick of adequate medical care, this "single instance of allegedly unconstitutional conduct does not demonstrate [Madison's] deliberate indifference" to inmates' medical needs. *Novack*, 226 F.3d at 531.

Minix makes much of Madison's representation to the jail that Lonz was a Qualified Mental Health Professional ("QMHP"), as that term is defined in the section of the Indiana Administrative Code providing standards for Medicaid-eligible mental health services. *See* 405 Ind. Admin. Code 5-21-1(c). Lonz was not a QMHP, Minix claims, because she lacked a master's or doctoral degree in one of specified disciplines such as psychiatry, psychology, and social work. *See id.* § 1(c)(4). Minix's reading of the Code is too narrow, for the relevant section also confers QMHP status on someone "with documented education, training, or experience, comparable or equivalent" to that acquired through the specified degrees. *Id.* § 1(c)(6). Although Lonz might have been short on formal licenses or degrees, she had obtained course work, training, and other experience in fields such as community health, mental illness, and the treatment of prisoners. More importantly, without evidence that Madison was on notice of inadequate inmate care by Lonz, we do not see how the full scope of Lonz's qualifications is relevant to establishing Madison's deliberate indifference.

We also conclude that Minix failed to produce evidence that any unconstitutional practice by Madison in this case was the "direct cause" of Zick's suicide, as required for municipal liability. Lonz's allegedly inadequate assessment took place in March 2003, shortly after Zick's incarceration at the jail and initial placement on a suicide watch. It was not until late April when different jail officials, not employed by Madison, placed Zick on his second suicide watch and began a series of

actions that led to Zick's death. Given this sequence of events, no causal link exists between Madison's conduct and Zick's "successful suicide attempt" that occurred several weeks later. *See Woodward*, 368 F.3d at 928; *cf. Thomas*, 588 F.3d at 454-55 (finding a link between the practice of failing to review medical requests and the inmate's death).

### 3. James

Turning to the defendants associated with Memorial Home Care, we begin with Minix's claim against Nurse James, who managed Memorial's facility at the jail. After Zick's placement on suicide watches in both March and April 2003, it was James's recommendations that led to Zick's removal from suicide watch and transfer out of medical segregation. Shortly after the second transfer, Zick hanged himself in his cell. Although in hindsight the decision to release Zick from medical observation might have been a mistake, Minix's evidence fails to show that James acted with deliberate indifference to a known risk that Zick would take his own life.

Prior to his final release from medical segregation in April 2003, Zick had been under observation for two days, during which time he denied suicidal thoughts and was generally alert and positive. He displayed similar behavior shortly before his release from the first suicide watch. Given Zick's denials of suicide, James had no actual knowledge that Zick would "imminently seek to take his own life." *Collins*, 462 F.3d at 761 & n.2 (noting that the inmate denied having suicidal thoughts); *see also*

*Matos*, 335 F.3d at 557 (finding that prison mental health professionals lacked knowledge of a serious risk where the inmate never said that he felt suicidal). Even had Zick displayed "strange behavior" raising a suspicion that he might harm himself, we would hesitate to find a triable issue on whether James deliberately disregarded a substantial risk of suicide. *Novack*, 226 F.3d at 530. Here, Zick displayed no such strange behavior or any obvious signs that he was an imminent suicide risk. *Cf. Thomas*, 588 F.3d at 452-53 (finding deliberate indifference based on prison officials ignoring an inmate's visible symptoms of serious illness).

To be sure, medical experts could—and did—criticize James's evaluations of Zick. Minix points to expert opinions produced during the summary judgment proceedings indicating that James displayed poor judgment in releasing Zick from suicide watch, and that she should not have taken Zick's denials of suicide at face value. Still, to the extent that James committed an error in judgment, that error "leads only to negligence," not to deliberate indifference. *Matos*, 335 F.3d at 557 (The defendants' failure "not to take 'no' for an answer when Matos told them he was not suicidal" did not show deliberate indifference.).

### 4. David

Dr. David, a director of medical services at Memorial's jail facility, was not directly involved in Zick's treatment except to approve the prescription medications that he received at the jail. This lack of direct participation makes

Minix's individual-capacity claim against David more difficult, since individual liability under § 1983 requires "personal involvement in the alleged constitutional deprivation." *Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003). To be personally liable under these circumstances, David must have condoned or acquiesced in a subordinate's unconstitutional treatment of Zick. *See id.*

Although Minix's evidence may cast doubt on David's performance as a medical director, it does not support an inference that David condoned any unconstitutional practice by Memorial employees. David, who started at the jail just a few weeks before Zick's arrival in March 2003, testified that he was unfamiliar with certain aspects of the jail's suicide-prevention procedures, including how much training and experience the jail nurses had in assessing an inmate's suicide risk. And as discussed, expert testimony questioned Nurse James's treatment of Zick, suggesting that her own experience ultimately proved inadequate. Missing from the record, however, is evidence suggesting that David was aware that James or any other nurse was performing incompetent assessments of suicidal inmates but nevertheless acquiesced in that practice. *Cf. Woodward*, 368 F.3d at 927 (discussing supervisors' approval of their employees' disregard for suicide-watch procedures). Nothing indicates that Memorial employees had a history of providing incompetent care or otherwise disregarding jail policy for suicide prevention. *See Novack*, 226 F.3d at 531 (finding no evidence of a pattern of suicide that would support an inference that jail policies for treating

mentally ill inmates were inadequate). Without knowl-
edge of the allegedly unconstitutional care that James
provided, David cannot be liable by mere virtue of his
supervisory status. *Palmer*, 327 F.3d at 594.

### 5.  Memorial Home Care

Like Madison Center, Memorial Home Care is a corpora-
tion that contracted with the jail to provide medical
services, so Memorial is treated the same as a municipality
for liability purposes under § 1983. To prevail on her
deliberate indifference claim, Minix must show that a
policy either adopted or condoned by Memorial caused
Zick to receive constitutionally inadequate care. *See
Novack*, 226 F.3d at 530.

Memorial was subject to the jail's policy of providing
proper health care to inmates, which required Memorial
to maintain an adequate health care staff at the jail. With
respect to suicide prevention specifically, jail policy
required that an inmate identified as possibly suicidal
be assessed by a nurse as soon as possible, followed by
continuous observation.

Minix does not directly challenge these jail policies or
identify any Memorial policy that was itself unconstitu-
tional. Instead, Minix argues that Memorial violated jail
policy by failing to ensure that suicidal inmates received
care from persons with adequate psychiatric training.
But similar to the failings in Minix's claim against
Madison Center, Minix lacks evidence that Memorial
condoned a widespread practice of providing inadequate

mental health care to inmates. Even if Zick received inadequate care from James or other nurses, this isolated failure would not show that Memorial had notice of ongoing conduct by its employees that created a substantial risk of harm. *Cf. id.* at 531 ("[A] series of bad acts" may support an inference that the municipality "was bound to have noticed what was going on . . . ." (quotation omitted)).

As additional support for her claim against Memorial, Minix points to the report of her expert, Dr. Gutierrez, indicating that the jail's nursing staff did not have the training required to competently assess an inmate's risk of suicide. The district court, however, found that Gutierrez's report was too unreliable to be admitted as an expert opinion under Federal Rule of Evidence 702, so we must determine whether the court abused its discretion in excluding this evidence, *see Smith v. Ford Motor Co.*, 215 F.3d 713, 717 (7th Cir. 2000).

Rule 702 allows "a witness qualified as an expert by knowledge, skill, experience, training, or education" to testify as to "scientific, technical, or other specialized knowledge," where such knowledge "will assist the trier of fact." To be admissible under Rule 702, the expert's opinion must offer more than a "bottom line." *Wendler & Ezra, P.C. v. Am. Int'l Group, Inc.*, 521 F.3d 790, 791 (7th Cir. 2008) (per curiam) (quotation omitted). The expert must explain the methodologies and principles supporting the opinion. *See* Fed. R. Evid. 702 (requiring that expert testimony be "the product of reliable principles and methods"); *Smith*, 215 F.3d at 718 ("[T]he role of the

court is to . . . examine the methodology the expert has used in reaching his conclusions.").

We conclude that the district court acted within its discretion in excluding Gutierrez's report. In the relevant portion of the report, Gutierrez asserted that taking an inmate off suicide watch was "beyond the scope of education, training, and experience for Nursing Personnel employed at the Jail in March and April of 2003." Gutierrez cited no medical standards or principles in support of that conclusion. Given Gutierrez's failure to explain his methodology, the district court could conclude that the report offered "nothing of value to the judicial process." *Wendler*, 521 F.3d at 791 (quotation omitted). Minix therefore cannot rely on Gutierrez's report to avoid summary judgment.

### III.  Conclusion

Zick's suicide was tragic, but the evidence produced was not enough to overcome the "high hurdle" set by the deliberate indifference standard for liability under § 1983. *Collins*, 462 F.3d at 762. We AFFIRM the grant of summary judgment in favor of the defendants.