FILED
United States Court of Appeals
Tenth Circuit

June 19, 2017

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

MICHELLE ERNST, as personal
representative of the estate of David
Michael Ernst, deceased,

      Plaintiff - Appellant,

v.

CREEK COUNTY PUBLIC
FACILITIES AUTHORITY,

      Defendant - Appellee.

No. 16-5148
(D.C. No. 4:14-CV-00504-GKF-PJC)
(N.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **TYMKOVICH**, Chief Judge, **BRISCOE** and **MURPHY**, Circuit Judges.

David Michael Ernst was held at the Creek County Criminal Justice Center while awaiting trial and sentencing. A few days after being sentenced to thirty-six years in prison, Ernst hanged himself in the jail's bathroom. Ernst had been evaluated for suicidal thoughts several times while at the jail, but was not on suicide watch when he took his own life.

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Ernst's Estate sued the jail, asserting violations of his Eighth Amendment rights under 42 U.S.C. § 1983.  The district court granted summary judgment in favor of the jail.  We affirm.  On appeal, the Estate points to two shortcomings that allegedly give rise to municipal liability: First, the jail had a practice of allowing unqualified medical personnel to perform suicide evaluations, and second, the jail's administrator failed to adequately supervise its medical contractor.  But the Estate fails to demonstrate that these shortcomings amount to a constitutional violation.

## I.  Background

When Ernst was booked into the Creek County jail in August 2013, he informed the staff that he was suicidal and taking medication for mental health issues.  At the time Ernst was imprisoned, the jail had a contract with Advanced Correctional Healthcare (ACH) to provide medical and mental health services to inmates.[1]  Upon booking, Amanda Spriggs, a licensed professional counselor (LPC) and an employee of ACH, evaluated Ernst for suicide risk, placed him on suicide watch, and then released him from suicide watch a couple days later.

In May 2014, Ernst's family contacted the jail and stated that Ernst needed additional mental health treatment.  Spriggs evaluated Ernst again and concluded

---

[1]  ACH is no longer a party to this appeal.  After ACH reached a confidential settlement with the Estate, Aplt. Br. at 2 n.1, the Estate dismissed its claims against ACH with prejudice.  App. 350.

that he was not suicidal. She believed Ernst was suffering from PTSD, however, and recommended that he be evaluated by a physician. Spriggs also gave Ernst a teaching guide on coping skills and planned to continue to monitor him.

On June 11, 2014, the day before Ernst was scheduled to be sentenced in his criminal case, another inmate notified the jail that he appeared suicidal. A staff member interviewed Ernst, but decided not to place him on suicide watch. The next day, June 12, Ernst received a thirty-six year prison sentence. The sheriff's deputy who transported Ernst back to the jail after his sentencing informed the jail that Ernst needed to be put on suicide watch because Ernst had said that he wanted to be run over by the deputy's vehicle. When Ernst arrived at the jail, he was evaluated by ACH employee Pam Hibbert, a licensed practical nurse (LPN). Hibbert concluded that Ernst did not appear suicidal, showed no signs of being depressed, and had in fact asked not to be placed on suicide watch because he did not want to be away from his friends. Neither Hibbert nor any other ACH or jail employee placed Ernst on suicide watch at that time.

Five days later, in the early morning hours of June 17, 2014, Ernst committed suicide by hanging himself in a shower stall.

The Estate sued the jail, claiming violations to Ernst's Eighth Amendment rights under 42 U.S.C. § 1983. The district court granted summary judgment to the jail, and the Estate appealed.

## II. Analysis

The Estate contends the district court erred in two ways: (1) Ernst's constitutional rights were violated because the jail had a practice and custom of allowing unqualified medical personnel to perform suicide evaluations; and (2) the administrator of the jail failed to adequately supervise its outside contractor, ACH.

A municipality may not be held liable under § 1983 solely because of injuries inflicted by its employees or agents. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Instead, a municipality is only liable under § 1983 for its own unconstitutional or illegal policies. *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998). A plaintiff alleging a municipal liability claim must therefore identify a government policy or custom that caused the injury and then demonstrate "that the policy was enacted or maintained with deliberate indifference to an almost inevitable constitutional injury." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013). A municipal policy or custom can be a formal regulation, an informal custom that develops into a well-settled practice, or deliberately indifferent training or supervision. *Id.* at 770; *see also Bryson v. Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010) (describing additional municipal policies or customs).

The Eighth Amendment requires prison officials to "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). We treat municipal liability claims arising out of an inmate's

suicide as claims based on the failure of prison officials to provide adequate medical care for the prisoner. We consider these claims under the "deliberate indifference to serious medical needs test." *Cox v. Glanz*, 800 F.3d 1231, 1247–48 (10th Cir. 2015); *see also Barrie v. Grand Cty.*, 119 F.3d 862, 866 (10th Cir. 1997). The deliberate indifference test has both objective and subjective components, and death (and therefore suicide) is recognized as a sufficiently serious harm to satisfy the objective standard. *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009). The subjective prong of the test requires the plaintiff to present evidence of the prison official's state of mind, and is met only if "the official 'knows of and disregards an excessive risk to inmate health or safety.'" *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (quoting *Farmer*, 511 U.S. at 837). It is not enough for an official to merely be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists; rather, the official 'must also draw the inference.'" *Id.* (quoting *Farmer*, 511 U.S. at 837).

We review the Estate's municipal liability claims de novo and apply the same summary judgment standard as the district court employed below. *Adler v. Wal-Mart Stores*, 144 F.3d 664, 670 (10th Cir. 1998).

The Estate first argues that the jail is liable for violating Ernst's Eighth Amendment rights because individuals other than a licensed physician or psychiatrist were permitted to evaluate whether Ernst was suicidal.

This claim is without merit. Even assuming for purposes of argument that the jail had a "policy" of allowing LPNs and LPCs to conduct suicide evaluations, Ernst provides no authority (and we are aware of none) for the proposition that an inmate's Eighth Amendment rights are violated if a medical professional other than a licensed physician or psychiatrist makes suicide watch determinations.[2] Absent a constitutional requirement that only licensed physicians or psychiatrists may conduct suicide evaluations, it cannot be said that the jail was deliberately indifferent to the risk of Ernst's suicide by permitting LPNs and LPCs to determine whether he belonged on suicide watch. In a case involving similar facts, the court in *Minix v. Canarecci*, 597 F.3d 824 (7th Cir. 2010), rejected a municipal liability claim that an employee "who had experience but no formal licensure in mental health treatment" was unqualified to assess patients for suicide evaluations. *Id.* at 828, 833.[3]

---

[2] The Estate does not appear to challenge the designation of LPNs and LPCs as medical professionals under Oklahoma law, and for good reason. Under Oklahoma law, LPNs are medical professionals who are required, "under the supervision or direction of a registered nurse [or] licensed physician," to "contribut[e] to the assessment of the health status of individuals." 59 Okla. St. § 567.3a(4). LPCs are also medical professionals, and they are specifically trained in mental healthcare. They are required under Oklahoma law to "provide the proper diagnosis of mental disorders in their clients" and possess a master's degree in counseling or a graduate degree in a mental health field. *See* 86 Okla. Admin. Code 86:10-3-2(c) and 86:10-9-1.

[3] The Estate's argument was muddled further at oral argument. There, the parties agreed that the jail's policy was that *any* employee—medical professional or otherwise—could place an inmate on suicide watch, but that only a medical

(continued...)

The Estate's second municipal liability claim is that the jail's administrator, Kelly Birch, deliberately failed to oversee the medical services contractor, ACH, and that this conduct constitutes an act of deliberate indifference by the facility. The parties dispute whether Birch held healthcare staff meetings in accordance with jail policy. But again, even assuming it is true that Birch failed to hold the appropriate meetings, the Estate's claim still fails. The Supreme Court has held that simply failing to follow jail policies is not a constitutional violation in and of itself. *See Davis v. Scherer*, 468 U.S. 183, 194 (1984). And the Estate has provided no evidence that if the healthcare staff meetings were held, Birch would have been put on notice that ACH was failing to meet Ernst's medical needs. Indeed, the facts indicate the opposite. Each time Ernst filed a medical complaint, ACH addressed his claims. Thus, during a meeting to review healthcare provided to inmates, it would likely appear to Birch that Ernst's healthcare needs were being met. Perhaps ACH was not providing Ernst with adequate healthcare, but the Estate does not make that claim here. Instead, the Estate argues failure of

---

[3](...continued)
professional could take an inmate off suicide watch. But it is not clear whether the jail had a "policy" regarding who could conduct suicide evaluations once a fellow inmate or outsider notified the jail that they believed an inmate was suicidal. To the extent that the Estate argued in its briefs that only licensed physicians or psychiatrists can make those determinations, it undercut that claim at oral argument by conceding that Spriggs, a licensed professional counselor, was qualified to evaluate Ernst.

oversight. And the Estate has not alleged a genuine issue of fact in support of its argument that Birch was deliberately indifferent to Ernst's medical needs.

In sum, the district court did not err in granting summary judgment in favor of the facility.

## III. Conclusion

This is undeniably a tragic case. But tragedy alone does not give rise to a § 1983 claim. Since the Estate has failed to carry its burden under our municipal liability precedents, we AFFIRM the district court's decision.

Entered for the Court


Timothy M. Tymkovich
Chief Judge