NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted April 3, 2019[*]
Decided April 3, 2019

**Before**

JOEL M. FLAUM, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 18-1517

|  |  |
|---|---|
| JAY F. VERMILLION,<br>    *Plaintiff-Appellant*,<br><br>    *v.*<br><br>CORIZON HEALTH, INC., et al.,<br>    *Defendants-Appellees*. | Appeal from the United States District Court for the Southern District of Indiana, Indianapolis Division.<br><br>No. 1:16-cv-01723-JMS-DLP<br><br>Jane Magnus-Stinson,<br>*Chief Judge*. |

**O R D E R**

Jay Vermillion, an Indiana inmate, believes that a prison doctor and nurse deliberately disregarded his urinary tract pain in violation of the Eighth Amendment. He sued them and Corizon Healthcare Services (the prison's healthcare provider), but the district court entered summary judgment for all defendants. We affirm.

We review the record in the light most favorable to Vermillion. *Hernandez v. Dart*, 814 F.3d 836, 840 (7th Cir. 2016). Vermillion suffered from hypertension, diabetes,

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

hyperlipidemia, and enlarged prostate, which was treated with Flomax and aspirin. On April 8, 2016, Vermillion noticed blood in his urine and went to the infirmary. Ruby Beeny, a prison nurse, took a urine sample and performed a dipstick test, which revealed the presence of white blood cells. Vermillion, who also complained of pelvic discomfort, reported to Beeny that he had seen blood in his urine for about three weeks; she states, however, that this was the first time he had told her. Beeny shared information about Vermillion's condition with Dr. Paul Talbot, a prison doctor, who diagnosed Vermillion with a urinary tract infection. The doctor prescribed an antibiotic and ordered additional testing, including bloodwork and a urine culture. The lab work of Vermillion's urine revealed abnormal levels of bacteria, which was consistent with a urinary tract infection. The bloodwork was negative for any sign of kidney stones, like high levels of calcium or uric acid.

Vermillion says he reported ongoing pain to Dr. Talbot at an appointment on April 12. Notes from the appointment reflect Vermillion's statement that he no longer had difficulty urinating and that his urine had cleared up; Vermillion appears to have attributed the improvement to his having passed a kidney stone. Dr. Talbot told Vermillion that the lab results from April 8 had not come back and that his symptoms did not indicate any new issues that merited additional treatment. The doctor advised Vermillion to return to the infirmary if he again had blood in his urine. Vermillion says he asked for something to treat his pain, though Dr. Talbot disputes this, saying that Vermillion did not express being in any pain. But that evening, Vermillion's pain worsened, and he began to urinate uncontrollably. He again saw blood in his urine and said that the flow was obstructed until he finally passed what he believes was another kidney stone. He did not, however, report this episode to Dr. Talbot or Beeny.

In the following weeks, Vermillion continued to see blood in his urine and experience pain while urinating. But blood test results from five appointments over seven months were unremarkable, revealing neither the presence of abnormal bacteria in his urine nor higher levels of calcium or uric acid that could form kidney stones.

Vermillion sued Dr. Talbot, Beeny, and Corizon under 42 U.S.C. § 1983 for failing to treat the pain associated with his urological issues. After a fraught discovery process, the defendants moved for summary judgment, supported by affidavits from Dr. Talbot, Beeny, and a medical expert, who said that the prison medical staff's treatment was reasonable. The court granted the motion, concluding that even if Vermillion had passed a kidney stone on April 12, Dr. Talbot had reasonably diagnosed and treated

Vermillion for a urinary tract infection based on his symptoms and lab results. It also determined that there was no basis for holding Corizon liable under § 1983.

On appeal, Vermillion argues that summary judgment was improper because factual disputes exist about the care he received for his pain. He points to ten instances where he believes that the district court overlooked factual questions, specifically regarding the manner in which medical staff monitored his chronic urinary tract conditions, his interactions with Dr. Talbot at the April 12 appointment, and Dr. Talbot's refusal to treat Vermillion's kidney stones. He contends that the district court credited the defendants' expert testimony above all else and ignored his sworn statements about what occurred.

To warrant a trial, Vermillion needed to present evidence that his medical condition was objectively serious and that the defendants knew of and disregarded an excessive risk to his health. *See Estelle v. Gamble*, 429 U.S. 97, 107 (1976); *Perez v. Fenoglio*, 792 F.3d 768, 781 (7th Cir. 2015). "Neither medical malpractice nor mere disagreement with a doctor's medical judgment is enough to prove deliberate indifference ...." *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010).

The district court appropriately concluded that Vermillion had not raised a factual question regarding the Eighth Amendment challenge to Dr. Talbot's treatment decisions. Given the results of Vermillion's tests and his complaints, Dr. Talbot believed that Vermillion was suffering from a urinary tract infection, and accordingly treated him for that condition. As Dr. Talbot maintains, Vermillion "never presented … with signs or symptoms of passing a kidney stone" and did not seek "medical treatment while he was allegedly pass[ing] a kidney stone." The doctor adds that he "did not know [Vermillion] was passing a kidney stone and none of his repeat lab studies indicated" its presence. Vermillion's disagreement with medical staff about whether they followed the correct course of treatment does not establish a triable issue unless the decision was "so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment," *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006); *accord Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014), and Dr. Talbot's decision was not.

Moreover, Vermillion has not called into question the testimony of the defendants' expert witness that Dr. Talbot used his professional judgment in determining how best to monitor Vermillion urological condition. At summary judgment, the defendants submitted the affidavit of an expert witness, Dr. Jeremy Fisk,

a physician specializing in family medicine with experience diagnosing and treating patients with urinary tract infections. Dr. Fisk stated that Dr. Talbot's treatment of Vermillion "was reasonable, appropriate, and within the medical and nursing standard of practice and care." This was because: (1) "[m]edical staff appropriately monitored Mr. Vermillion's enlarged prostate through routine appointments and symptomatic treatment for his complaints"; (2) Vermillion's symptoms on April 8 were consistent with Dr. Talbot's diagnosis of a urinary tract infection; and (3) "[m]edical staff appropriately examined Mr. Vermillion, ordered testing and diagnosed Vermillion with a [urinary tract infection] based on his symptoms and the urine dipstick results. Medical staff also property treated Mr. Vermillion with antibiotics and follow-up appointments to monitor his condition." The choice to treat Vermillion with antibiotics and to advise him to report to medical services if he observed blood in his urine was "a classic example of a matter for medical judgment." *Estelle*, 429 U.S. at 107; *Pyles*, 771 F.3d at 411.

Vermillion does identify one disputed fact—whether he reported heightened pain at his April 12 appointment—but it is immaterial. As Dr. Fisk testified, a common symptom of a urinary tract infection is abdominal or pelvic pain, so any reports of pelvic or abdominal pain at the April 12 appointment would have supported Dr. Talbot's diagnosis. An inmate is entitled only to reasonable measures from medical professionals to treat a substantial risk of serious harm, *Arnett v. Webster*, 658 F.3d 742, 754 (7th Cir. 2011), and Vermillion has presented no evidence that his complaints of increased pain warranted treatment beyond Dr. Talbot's decision to prescribe an antibiotic, Flomax, and aspirin. According to Dr. Fisk, Dr. Talbot's treatment was reasonable, and reasonable treatment is all the Constitution requires. *See id.* at 758.

Vermillion next argues that Beeny acted with deliberate indifference because she did not adequately treat his pain on or after April 8. But it is undisputed that Beeny, a licensed practical nurse, did not make treatment decisions for Vermillion, and she cannot be liable for constitutional deprivations for which she is not personally responsible. *See Minix v. Canarecci*, 597 F.3d 824, 833–84 (7th Cir. 2010).

Vermillion also contends that Corizon is liable for Dr. Talbot's and Beeny's actions because it had a policy of not treating prisoners with kidney stones. But Vermillion has failed to offer evidence that prison medical staff acted with deliberate indifference, and without evidence of "a pattern of behavior that would support an inference of a custom or policy," Vermillion cannot succeed on this claim. *Shields v. Ill. Dep't of Corr.*, 746 F.3d 782, 796 (7th Cir. 2014).

Vermillion also challenges several of the district court's procedural rulings. First, he argues that the court abused its discretion by dismissing his state-law claims of malpractice, claims that the defendants had addressed for the first time in their reply brief. But "[t]he usual practice in this circuit is for district courts to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial," and Vermillion offered no reason why we should depart from that practice. *Hagan v. Quinn*, 867 F.3d 816, 830 (7th Cir. 2017) (internal quotation marks omitted).

Second, Vermillion contends that the court wrongly denied his motions to exclude Dr. Talbot's supplemental affidavit, which he believes is void because its signature page was identical to the signature page on the doctor's original affidavit. The defendants explained, however, that Dr. Talbot had fully reviewed, executed, and attested to the facts in both affidavits, and that the duplication of the signature page stemmed from a production mistake of counsel's staff. When defense counsel learned of this error, they moved to correct it. The district court accepted defense counsel's explanation and allowed counsel to correct the error because Dr. Talbot had "sworn to the truth of the statements asserted" in the supplemental affidavit. We see nothing improper about the court's advising Vermillion that it would consider the statements in the affidavit as it would consider "any other sworn testimony."

Third, Vermillion says that the district court erred in denying various discovery motions because he never was able to obtain the information he needed about Dr. Talbot, Beeny, and Corizon to properly litigate his case (i.e. the mailing addresses and employment records of individual defendants, Corizon's financial records, and other inmates' medical records). "[T]rial courts retain broad discretion to limit and manage discovery under Rule 26 of the civil rules." *Geiger v. Aetna Life Ins. Co.*, 845 F.3d 357, 365 (7th Cir. 2017). The district court observed that Vermillion was able to obtain relevant and properly requested materials from both defendants and nonparties but reasonably denied discovery that was overly broad, invasive, or unrelated to Vermillion's claims. *See Chatham v. Davis*, 839 F.3d 679, 686–87 (7th Cir. 2016).

Fourth, Vermillion asserts that the district court should not have denied his motion for a preliminary injunction directing the defendants to take him to an urologist outside the prison. The district court, however, appropriately denied the motion after correctly determining that Vermillion did not have a likely chance of success on the merits of his case, nor had he shown that he would suffer irreparable harm if the injunction were not granted. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20

(2008). With regard to Vermillion's ongoing urological condition, after reviewing Vermillion's recent care, the court reasonably concluded that "[t]he record shows that Vermillion has been given, and continues to receive, adequate care for his urinary and pain complaints, including examinations, testing and medications."

Finally, Vermillion contends that the district court abused its discretion in not allowing him to amend his complaint to include new defendants who, he said, were also committing Eighth Amendment violations related to his urological condition. But Vermillion filed his amended complaint after the pretrial deadline, and the claims he wished to add were unrelated to his underlying claim and did not belong in this case. *See Airborne Beepers & Video, Inc. v. AT & T Mobility LLC*, 499 F.3d 663, 666 (7th Cir. 2007) (citing FED. R. CIV. P. 15(a)) (determining district court may deny motion to amend for "undue delay"); *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). In any event, Vermillion filed a new complaint addressing these later claims and separately litigated that case.

We AFFIRM the judgment of the district court.