**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted May 17, 2019[*]
Decided May 20, 2019

**Before**

MICHAEL S. KANNE, *Circuit Judge*

AMY C. BARRETT, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

No. 18-3151

| | |
|---|---|
| LITTLETON E. JACKSON, *Plaintiff-Appellant*, | Appeal from the United States District Court for the Eastern District of Wisconsin. |
| *v.* | No. 17-C-34 |
| SONYA L. ANDERSON, et al., *Defendants-Appellees*. | William C. Griesbach, *Chief Judge*. |

**O R D E R**

Littleton Jackson, a Wisconsin inmate, sued multiple nurses and prison medical staff for disregarding his complaints about a broken facial bone in violation of the Eighth Amendment and for retaliating against him in violation of the First Amendment after he filed grievances against the health staff. The district court entered summary judgment for the defendants, finding that Jackson lacked sufficient evidence to persuade a reasonable factfinder that he suffered from a serious medical issue, that any

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. *See* FED. R. APP. P. 34(a)(2)(C).

defendant knew or recklessly disregarded such an issue, or that he suffered a deprivation that would likely deter future First Amendment activity. We affirm.

We construe the facts and draw all reasonable inferences in favor of Jackson, who is the nonmoving party. *See Arnett v. Webster*, 658 F.3d 742, 749 (7th Cir. 2011). Jackson hit his face against a metal bar while he was exercising, prompting him to submit a health-services request. He expressed concern that he had broken a bone in his face. (He also mentioned a host of other unrelated ailments.) A prison nurse offered to examine him two days later, but Jackson refused because he did not want security staff in the examination room. Later that day, Jackson filed a second request, reiterating concern about the bone but complaining mostly about a bump near his right ear. The next day the same nurse examined Jackson, applied slight pressure to both sides of his face, but saw no facial bruising, swelling, or physical discomfort. The nurse told Jackson that he would schedule an appointment with a doctor and offered ibuprofen or Tylenol for any pain, but Jackson declined the medicine.

Several months later, Jackson filed inmate grievances about his lack of medical treatment. He complained that the health-services staff ignored both the bump on his ear and the injury to his face in retaliation for grievances he had filed months earlier after being overcharged for a health appointment. The health-services manager recommended dismissing these grievances because Jackson already had seen medical staff and was on the list to see an off-site doctor.

Jackson then saw an off-site nurse practitioner, who examined him but did not observe a broken bone. Although Jackson expressed his concern that a bone was broken, he did not complain of any facial pain.

Weeks later, Jackson submitted two more health-services requests to receive an x-ray but did not get one. After the first request, a nurse examined both sides of his face and saw no abnormality. Jackson again refused pain medicine. He followed up two weeks later with a second request, and health staff told him that he was on the waiting list to see the doctor.

During his second appointment with the nurse practitioner, Jackson complained about the broken bone, the bump near his right ear, and hypertension. The nurse practitioner noted that Jackson did not appear to be in any distress. She referred him to a dermatologist to evaluate the bump near his ear and prescribed medication for his hypertension. Although Jackson voiced concern of a possible broken bone, he did not

complain of pain, so the nurse practitioner told him to submit a health request. Soon after the appointment, Jackson then submitted another health request for an x-ray.

At Jackson's final appointment with the nurse practitioner (to check his blood pressure), he did not discuss any concerns related to a broken bone. Rather, he said that he was feeling fine and did not complain of any facial pain.

Jackson then sued the nurses, the nurse practitioner, and the health-services manager for deliberate indifference to his complaints about a broken bone. He also asserted that the prison health staff ignored his requests for treatment in retaliation for his grievance that he was overcharged for an appointment.

The district court entered summary judgment for the defendants. The court concluded, first, that Jackson failed to show that he has an objectively serious medical condition because he presented no evidence that he had suffered a broken bone (or even any facial deformity such as swelling or bruising that might suggest a broken bone), nor did the record reflect that he was in substantial pain. And even if Jackson had presented evidence of an objectively serious medical condition, the court added, no reasonable factfinder could infer deliberate indifference based on the evidence that the health staff had responded attentively to his medical needs. And Jackson's retaliation claim failed because there was no evidence that the health staff ever ignored his treatment requests.

On appeal, Jackson first challenges the entry of summary judgment on his deliberate-indifference claim because a material dispute exists over whether the nurses knew that his bone was broken. He maintains that he told the nurses about his broken bone, a clearly serious medical condition, and their failure to order an x-ray or provide treatment necessarily amounts to deliberate indifference.

But the district court properly concluded that no reasonable factfinder could infer that the nurses were deliberately indifferent. Although Jackson told the nurses about a possible broken facial bone, they were not required to adopt his diagnosis or demands for an x-ray once they ruled out any signs of a broken bone from their own examinations. "A medical professional is entitled to deference in treatment decisions unless no minimally competent professional would have so responded under those circumstances." *See Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) (internal quotations omitted). And the nurses' responses to Jackson's complaints—examining his face, offering pain medicine, and scheduling or advising him to see a doctor—were not so

inadequate that they demonstrated an "absence of professional judgment" or suggested "intentional wrongdoing." *Arnett*, 658 F.3d at 751.

Jackson next argues that the district court overlooked evidence that the health-services manager knew about his possible broken bone from his two health-services requests yet did nothing to address his treatment needs. It is true that "[a]n inmate's correspondence to a prison administrator may [] establish a basis for personal liability under § 1983 where that correspondence provides sufficient knowledge of a constitutional deprivation," *Perez v. Fenoglio*, 792 F.3d 768, 781–82 (7th Cir. 2015). Because the manager did not provide direct patient care, she is liable only if she condoned or acquiesced in others' unconstitutional treatment of Jackson. *See Minix v. Canarecci*, 597 F.3d 824, 833–34 (7th Cir. 2010). But there is no evidence here of a constitutional deprivation, let alone one that the manager willfully ignored.

Finally, on his retaliation claim, Jackson maintains that medical staff ignored his health requests in retaliation for the earlier grievance he had filed regarding his overpayment. But as the district court correctly determined, Jackson did not furnish any evidence that his health requests were ever ignored.

We have considered Jackson's remaining arguments and none has merit.

AFFIRMED