NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted August 25, 2021[*]
Decided August 26, 2021

**Before**

DIANE S. SYKES, *Chief Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 19-3303

| | |
|---|---|
| CHARLES E. THORNTON, *Plaintiff-Appellant*, | Appeal from the United States District Court for the Southern District of Illinois. |
| *v.* | No. 17-CV-761-SMY-RJD |
| JACQUELINE LASHBROOK, et al., *Defendants-Appellees*. | Staci M. Yandle, *Judge*. |

**O R D E R**

When Charles Thornton, an Illinois inmate, did not receive his pain medication for three weeks, he sued several prison medical providers and other prison staff for deliberate indifference to his medical needs. The district court entered summary judgment for the defendants, concluding that there was no evidence that Thornton had

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

an objectively serious medical need for pain medication or that any defendant consciously disregarded that need. We affirm.

Thornton has been taking the medication gabapentin for pain since 2009, when he was shot, and a bullet lodged in his neck near his spinal cord. In February 2017, he was transferred to Menard Correctional Center, and his prescription was renewed for a month. As his prescription wound down, he was advised by Nurse Juanita House that he needed to request a refill. A few days later, he requested to see a doctor to do so.

His appointment to refill his prescription was rescheduled three times. His first appointment, scheduled for the March 12 medical-call line, was cancelled because of a shortage of nurses that day. His second appointment, set for March 15, had to be rescheduled because of medical emergencies that required the staff's attention. And his third appointment, set for March 17, had to be cancelled because the doctor scheduled to work the call line was unavailable.

Thornton eventually was seen on March 19 and his prescription, received by the pharmacy on March 21, was renewed for three months.

Thornton did not begin receiving the medicine until March 29. Between March 21 and March 29, Nurse House left daily notations on Thornton's medication-administration record that his medicine was unavailable to her, and that she had apprised the pharmacy of the issue.

During the three weeks that he did not receive his medicine, Thornton submitted two grievances that Menard's warden denied. In each instance, the subject of the grievance—the delay in seeing a doctor and the delay in receiving the medication—was resolved before a response was made.

Thornton filed this complaint several months later, alleging that the defendants acted with deliberate indifference by denying pain medication to him for three weeks. He asserted that Dr. John Trost, then Menard's medical director, failed to ensure the prompt renewal of his prescription. He also asserted that Nurse House withheld his medication for over a week after it had arrived in the pharmacy. And he asserted that six other medical-staff members (four nurses and two correctional medical technicians) schemed with Nurse House to withhold his medication on their shifts distributing medicine. Thornton also asserted that the warden and the healthcare-unit administrator wrongly denied his two grievances. Finally, Thornton sued Wexford Health Sources, the prison's contracted medical provider, under *Monell v. Dep't of Soc. Servs. of N.Y.*,

436 U.S. 658 (1978), for understaffing the prison health unit and failing to oversee the nurses responsible for distributing medication.

A magistrate judge recommended granting the defendants' motions for summary judgment on grounds that there was no evidence that Thornton had an objectively serious medical need for pain medication. Even if Thornton had a serious medical need for the pain medication, the magistrate judge added, there was no evidence that any defendant acted with deliberate indifference to that medical need. The evidence did not reflect that Dr. Trost had any personal role in Thornton's medical care or that Nurse House failed to deliver any prescription medicine that the pharmacy made available to her. The evidence also did not reveal that any other medical staff members were responsible for distributing Thornton's medicine and, even if they were, no evidence suggested that the pharmacy provided them with it. As for the warden and the healthcare-unit administrator, the evidence reflected that they reasonably responded to Thornton's grievances. And regarding Wexford, the evidence did not show that the company had a policy or practice of understaffing or failing to monitor nurses.

Thornton objected generally to the magistrate judge's recommendation, which the district judge in turn adopted. The district judge agreed with the conclusion that Thornton lacked evidence that he faced an objectively serious medical need. She noted that his subjective complaints of pain did not interfere with most of his daily activities during the three weeks in question. And she pointed out that Thornton's asserted need for the pain medication was undermined by his refusal to take it in August 2018, as well as the instances in which he was found to hoard his pills or give them to other inmates.

On appeal, Thornton argues that the district court ignored evidence showing that he had a serious medical need for pain medicine. He maintains that at least nine doctors over the seven years leading up to the 2017 incident had deemed his pain serious enough to be treated with medication. Indeed, a condition is objectively serious if it "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020) (internal quotations omitted).

But even if we assume Thornton's pain to be sufficiently serious, he still needed to present evidence that the defendants knew of his medical need and disregarded it. *Eagan v. Dempsey*, 987 F.3d 667, 694–95 (7th Cir. 2021) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). And the evidence, examined in the light most favorable to Thornton,

*Shields v. Ill. Dep't of Corr.*, 746 F.3d 782, 786 (7th Cir. 2014), does not reflect that any defendant disregarded Thornton's pain.

We first consider Thornton's assertion that Dr. Trost, the medical director, unnecessarily prolonged his pain by causing the delay in his prescription being renewed. But as the magistrate judge explained, Dr. Trost could not have been responsible for the delays because he was not personally involved in Thornton's care. *See Machicote v. Roethlisberger*, 969 F.3d 822, 828 (7th Cir. 2020) (citing *Minix v. Canarecci*, 597 F.3d 824, 833–34 (7th Cir. 2010)). Thornton did not provide any evidence that Dr. Trost ever examined or spoke to him about his condition.

As for Nurse House, Thornton argues that she must have withheld his medicine because it had been available at the pharmacy as early as March 21, and he did not receive any medication for another eight days. But Thornton had to present evidence from which a jury could infer that Nurse House exhibited deliberate indifference—that her conduct was more than grossly negligent. *See Quinn v. Wexford Health Sources, Inc.*, No. 20-1483, ___ F.4th ___, 2021 WL 3485509, at *6 (7th Cir. Aug. 9, 2021). He did not meet this burden. The record reflects that Nurse House did not have direct access to inmates' medication, whether in stock at the pharmacy or not, and Thornton does not identify any evidence suggesting that she could have done more than she did without the pharmacy making the medicine available.

Thornton next challenges the court's conclusion that no evidence showed that any other nurse or medical technician was personally involved with his care during the relevant time period. Thornton points to his affidavit (which he attached to his response to the defendants' motions for summary judgment), specifying which days each staff member was assigned to deliver his medication during the eight days (March 21-March 28) he did not receive it. But the magistrate judge appropriately discredited the affidavit as wholly inconsistent with his prior deposition testimony. *See James v. Hale*, 959 F.3d 307, 316 (7th Cir. 2020). Even if we assume that these nurses and medical technicians were responsible for distributing Thornton's medicine, there is no evidence that they had authorization to deliver any medication other than that provided by the pharmacy.

Finally, Thornton mounts no meaningful challenge to the court's conclusion that the record lacks any evidence that the warden and the healthcare-unit administrator were deliberately indifferent in their responses to his grievances. So long as a prisoner is under the care of medical personnel, non-medical officials generally will be justified in believing that the prisoner is receiving adequate care. *See Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011). Here, the two denied Thornton's grievances only after receiving

assurances from the medical unit that he had begun receiving the requested care, and the record suggests no basis for either official to have doubted these assurances.

We have considered Thornton's other arguments, and none has merit.

AFFIRMED